BRINKMAN et al., Appellants,

v.

DOUGHTY et al., Appellees.

[Cite as *Brinkman v. Doughty* (2000), 140 Ohio App.3d 494.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 99–CA–92.

Decided Nov. 17, 2000.

Timothy N. Toma and Nicholas E. Bunch, for appellants.

Richard E. Mayhall, for appellees.

BROGAN, Judge.

This case is before us on the appeal of plaintiffs-appellants from a decision granting summary judgment in favor of the defendants-appellees. The plaintiffs are seven siblings and the mother of Lois Butler, who died on August 7, 1994, as the result of a head-on collision. The defendants are two lawyers and a law firm that represented Butler's estate, and also represented Butler's three surviving children, Karen, Jim, and Scott Butler. Lois Butler additionally had an eighth sibling, who is not a party to this appeal.

For purposes of summary judgment, the defendants assumed that the facts in the complaint were true. According to the complaint, the Butler children retained Jon Doughty, James Doughty, and Doughty & Doughty as attorneys for Butler's estate on September 26, 1994. The attorneys were also retained to pursue claims for Lois Butler's wrongful death.

Subsequently, Karen Butler was appointed administrator of her mother's estate. On October 12, 1994, the probate court approved the retention of Doughty & Doughty. Thereafter, the Doughtys negotiated a $100,000 settlement with Motorists Mutual (the tortfeasor's insurance carrier). This settlement was based on an assumption that the tortfeasor's policy limits would be exhausted by the $100,000 payment. However, about $110,000 more in proceeds was still potentially available from the policy. A further settlement of $195,000 was later obtained from Nationwide (Mrs. Butler's underinsurance carrier).

On April 10, 1995, the probate court approved the Motorists Mutual settlement. Likewise, the probate court approved the Nationwide settlement on June 5, 1995. The settlement amounts were distributed to the three Butler children and to the defendants for their legal services. Although the defendants knew that Lois Butler was survived by a mother and several siblings, the mother and siblings were not listed as next of kin on the application to approve the partial wrongful death settlement. Further, defendants did not try to obtain any settlement or recovery for any next of kin other than the Butler children. The plaintiffs were not notified of the settlements, hearings, or approvals. In fact, they did not learn about the probate court proceedings until August 1996.

On June 27, 1997, plaintiffs filed a legal malpractice action against Jon Doughty, James Doughty, and Doughty & Doughty. In the complaint, plaintiffs alleged that the defendants refused and failed to fulfill their professional duty to adequately represent all beneficiaries and next of kin. After discovery was conducted, the defendants filed a motion for summary judgment.

On November 19, 1999, the trial court issued a decision granting summary judgment to the defendants. In the decision, the trial court noted that legal malpractice liability to third parties arises only where the third party is in privity

with the attorney's client or where the attorney acts maliciously. Concerning the first point, the court found that the interests of the decedent's mother and siblings were not vested but were subject to a contingency. Accordingly, the court concluded that the plaintiffs' interests were only potential and that the plaintiffs were not in privity with the fiduciary for the estate. This being the case, the attorneys for the fiduciary owed no duty to plaintiffs. The court also found that defendants had not acted maliciously.

Seven of the eight siblings who originally filed the complaint, and Mrs. Butler's mother, Cordia Brinkman, now appeal from the summary judgment decision. In a single assignment of error, the plaintiffs assert that the trial court erred in granting the motion for summary judgment. The specific issue presented for review is whether defendants owed a professional duty as attorneys to adequately represent the plaintiffs.

Before addressing this point, we note that our review of summary judgment decisions is *de novo, i.e.,* we apply the standards used by the trial court. *Long v. Tokai Bank of California* (1996), 114 Ohio App.3d 116, 119, 682 N.E.2d 1052, 1054–1055. Under established standards, "summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, 204.

In the present case, there is nothing to construe in plaintiffs' favor, since defendants accepted the facts in the complaint as true. Furthermore, the general law regarding an attorney's liability to third parties is not disputed. Specifically:

"An attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of, and with the knowledge of, his client, unless such third person is in privity with the client or the attorney acts maliciously." *Scholler v. Scholler* (1984), 10 Ohio St.3d 98, 10 OBR 426, 462 N.E.2d 158, paragraph one of the syllabus.

Given these facts, the only pertinent question is whether the trial court was legally correct when it found a lack of privity between the wrongful death beneficiaries and the administrator.

As we mentioned, the trial court concluded that the beneficiaries had a "contingent," rather than a "vested" interest. Plaintiffs contend that this is incorrect, because the wrongful death statute (R.C. 2125.02) fixes the status of beneficiaries as of the decedent's death. According to plaintiffs, wrongful death beneficiaries are the "real parties in interest," and the administrator is merely a

nominal party. Further, because the administrator owes a fiduciary duty to each statutory beneficiary, the attorneys she retains owe the beneficiaries a corresponding duty of care.

In response, defendants claim that the siblings' interests are merely contingent because the wrongful death statute does not presume that they have suffered damages. Notably, defendants make no similar assertion about Cordia Brinkman, the decedent's mother, who was within the class of persons "rebuttably presumed" to have suffered damages as a result of Lois Butler's death. See R.C. 2125.02(A)(1).

In *Simon v. Zipperstein* (1987), 32 Ohio St.3d 74, 76–77, 512 N.E.2d 636, 637–639, the Ohio Supreme Court held that a potential beneficiary of an estate had no vested interest in the estate. Accordingly, the court held that the beneficiary lacked privity and could not sue the estate's attorney for negligently failing to comply with the decedent's testamentary intent. Subsequently, in *Elam v. Hyatt Legal Serv., Inc.* (1989), 44 Ohio St.3d 175, 541 N.E.2d 616, the Ohio Supreme Court held:

"A beneficiary whose interest in an estate is vested is in privity with the fiduciary of the estate, and where such privity exists the attorney for the fiduciary is not immune from liability to the vested beneficiary for damages arising from the attorney's negligent performance." *Id.* at syllabus.

In particular, the court stressed:

"It is the duty of the fiduciary of an estate to serve as the representative of the entire estate. Such fiduciary, in the administration of an estate, owes a duty to beneficiaries to act in a manner which protects the beneficiaries' interests. We believe this duty places the beneficiaries in privity with the executor." *Id.* at 176, 541 N.E.2d at 616, 618.

Significantly, the court commented that "at first blush," its holding appeared to contradict *Zipperstein.* However, the court distinguished *Zipperstein* by pointing to the lack of doubt about the status of the beneficiaries in its current case. Specifically, the beneficiaries were remaindermen who had been deprived, at least temporarily, of their interest in the decedent's property due to an attorney's negligent preparation of a deed. (The deed conveyed the property in fee simple and ignored the remaindermen's interest.) As was noted, the court observed that the remaindermen clearly had a vested interest. *Id.* at 177, 541 N.E.2d at 618. Ironically, the court then said in a footnote:

"We note without comment that, while the holding in *Zipperstein, supra,* was based largely on the fact that the person in question was only a potential beneficiary, a review of the facts seems to indicate that the person's interest was vested." *Id.* at 177, 541 N.E.2d at 618, fn. 2.

*Zipperstein* involved a malpractice action against an attorney who had drafted both an antenuptial agreement and a will for a divorced father. *Zipperstein,* 32 Ohio St.3d at 74–75, 512 N.E.2d at 636–637. Although the antenuptial agreement limited the survivorship interest of the decedent's new wife, the will (which was drafted later) did not mention the agreement. As a result, the wife obtained more property than the decedent appeared to have intended.

After the father died, his son, who was a beneficiary under the will, filed a malpractice action against the attorney. *Id.* Under these circumstances, the Ohio Supreme Court held that the son was only a potential beneficiary and had no vested interest in the estate. The court's later observations in *Elam,* of course, cast doubt on this holding, since the son's interest appears to be as "vested" as that of the remaindermen in *Elam.*

Subsequently, the Ohio Supreme Court appeared to expand *Elam* and to disregard the notion that an interest must be "vested." In this regard, the court indicated that privity arises as a result of the fiduciary relationship itself. Specifically, the court said:

"*Elam* therefore recognizes that an attorney retained by a fiduciary owes a similar duty to those with whom the client has a fiduciary relationship. * * *

"*A fortiori* those persons to whom a fiduciary duty is owed are in privity with the fiduciary such that an attorney-client relationship established with the fiduciary extends to those in privity therewith regarding matters to which the fiduciary duty relates." *Arpadi v. First MSP Corp.* (1994), 68 Ohio St.3d 453, 458, 628 N.E.2d 1335, 1339.

*Zipperstein, Elam,* and *Arpadi* did not involve wrongful death beneficiaries, but *Elam* and *Arpadi* did deal with fiduciary relationships between the direct client of the attorney and the party bringing the malpractice action. Given the Supreme Court's holdings in these cases, Karen Butler's attorney-client relationship with the defendants extended to the statutory beneficiaries. Like the fiduciaries in *Arpadi* and *Elam,* Karen Butler owed a fiduciary duty to all statutory beneficiaries, and they were, therefore, in privity with her for purposes of her attorney-client relationship with the defendants.

We note that we reached a similar result in *DePugh v. Sladoje* (1996), 111 Ohio App.3d 675, 676 N.E.2d 1231, although in a slightly different factual situation, *i.e.,* in *DePugh,* an estate's *administrator* was allowed to bring suit against an attorney who had individually represented a wrongful death beneficiary. In *DePugh,* the decedent's father was appointed administrator, and he then filed a wrongful death action. One group of attorneys represented the father as the administrator and as a beneficiary, and another attorney represented the decedent's common-law wife. After a dispute arose, the father agreed to resign as

administrator. His attorneys also dismissed the wrongful death action in the mistaken belief that the savings statute applied and would provide an additional year for filing suit. However, the savings statute did not apply because the statute of limitations had not yet elapsed when the suit was dismissed. *Id.* at 678–679, 676 N.E.2d at 1233–1234.

By the time the wife was appointed to administer the estate, the statute of limitations had expired but the attorneys did not realize it. Instead, they filed new actions on behalf of the administrator and the father. Subsequently, the father's suit was dismissed because of the expiration of the limitations period, and the estate's suit was settled for a nominal sum, allegedly due to the attorneys' belated realization that the statute of limitations had expired. *Id.* at 679, 676 N.E.2d at 1234.

Ultimately, the father was again appointed administrator. He then filed a malpractice action against his own attorneys as well as the wife's attorneys. These latter attorneys did not represent the estate before the limitations period expired; rather, they represented the wife in her personal capacity. Citing *Elam,* the father argued that he was in privity with the wife as a vested beneficiary of the estate and could, therefore, assert a claim against her attorneys. *Id.* at 682, 676 N.E.2d at 1236.

In considering this claim, we noted that it was the reverse of the one presented in *Elam.* Specifically, *Elam* involved a beneficiary's claim against the attorney, while *DePugh* involved the administrator's malpractice claim on behalf of a beneficiary of the estate. *Id.* at 682–683, 676 N.E.2d at 1236–1237. Nonetheless, we concluded:

"[T]he rationale by which the Supreme Court held in *Elam* that privity exists between the beneficiary of an estate and the fiduciary so as to support the beneficiary's legal malpractice action against the fiduciary's attorney is equally persuasive under the facts in this case. To the extent that * * * [the attorneys'] representation of * * * [the wife] as a beneficiary of the estate compromised the estate's wrongful death claim * * *, we hold that the estate may have a malpractice action against them." *Id.* at 683, 676 N.E.2d at 1236.

In *DePugh,* we did not discuss the status of the beneficiaries under the wrongful death statute. Moreover, unlike the present case, *DePugh* did not involve "other next of kin." Instead, the father and common-law wife were persons, like Cordia Brinkman, who were rebuttably presumed under R.C. 2125.02 to have suffered damages. However, these distinctions are insignificant. As we noted, the Ohio Supreme Court has held that if a fiduciary relationship exists, the attorney-client relationship extends to those parties included in the fiduciary relationship.

■ Furthermore, even if the Supreme Court had adhered to its distinction between "vested" and "contingent" interests, all the statutory wrongful death beneficiaries had a vested interest. Specifically, under R.C. 2125.02(A)(1), the personal representative of the decedent is required to bring a wrongful death action in the name of the decedent for the exclusive benefit of the surviving spouse, children, parents, and other next of kin. R.C. 2125.02(A)(3)(a) additionally indicates that the decedent's date of death fixes the status of all beneficiaries of an action for wrongful death for purposes of determining the damages suffered. In this respect, wrongful death cases are like actions involving the contents of wills, i.e., the legal right to recovery arises or is fixed at the time of death. In our opinion, this is sufficient to give the beneficiaries a vested interest.

Defendants contend that the siblings' right to recover was not vested because they must prove damages to recover. According to the Ohio Supreme Court:

"The word 'vested' has a double meaning. The word 'vest' is defined in Bouvier's Law Dictionary (3 Rev.) as 'to give an immediate fixed right of present or future enjoyment. An estate is vested in possession when there exists a right of present enjoyment; and an estate is vested in interest when there is a present fixed right of future enjoyment.'

"The word 'vested,' standing alone, includes both present and future enjoyment so long as the right to such present or future enjoyment is presently fixed." *Brown v. Buyer's Corp.* (1973), 35 Ohio St.2d 191, 195–196, 64 O.O.2d 126, 128–129, 299 N.E.2d 279, 282.

By contrast, "a contingent claim is one, the liability upon which is dependent upon some uncertain future event which may or may not occur. It is this element of dependency upon an uncertainty which renders a claim contingent.

" * * *

"A liability on an unliquidated claim for damages arising out of a tort does not depend for its creation upon the occurrence of some uncertain event in the future. On the contrary, such claim is, as of necessity it must be, based on the theory that the event, the tort, giving rise to liability, has already occurred, and that a cause of action has already accrued and is in existence. A claim thus grounded cannot be said to be contingent." *Pierce v. Johnson* (1939), 136 Ohio St. 95, 98–99, 16 O.O. 34, 36, 23 N.E.2d 993, 995.

Consequently, because the tort giving rise to the claim for Butler's wrongful death had already occurred, the interest of Butler's statutory beneficiaries was vested, not contingent. The fact that the beneficiaries had to prove their damages did not make their interest contingent. Indeed, if this were the case, all tort claims would be "contingent," since proof of damages is always required as a

basis for recovery. As was noted, the Ohio Supreme Court has used a different analysis for deciding whether claims are contingent.

█ As an alternate basis for the trial court's decision, defendants contend that privity is lacking with regard to all beneficiaries because all plaintiffs disclaimed any interest in the proceeds of the settlement from Lois Butler's wrongful death. However, these facts were not stipulated in the trial court, nor was this argument addressed below. Accordingly, we decline to consider it. See, e.g., *Dayton Monetary Assoc. v. Becker* (1998), 126 Ohio App.3d 527, 539, 710 N.E.2d 1151, 1159–1160 (appellate court will not consider materials that were not presented to the trial court). If necessary, the trial court can address this issue on remand.

Defendants' final argument is that recognizing attorney liability in this type of situation opens "Pandora's Box," and will make attorneys hesitant to settle cases before trial or appeal. As authority for this theory, defendants cite the dissenting opinion in *DePugh, supra.* In the dissent, Judge Young observed that lawyers will be reluctant to settle cases if their judgment can later be questioned by potential beneficiaries of the settlement. 111 Ohio App.3d at 689–690, 676 N.E.2d at 1240–1241. However, we declined to adopt that position in *DePugh,* and do not need to further address it here.

In light of the preceding discussion, the plaintiffs' single assignment of error is sustained. The decision of the trial court is reversed, and this case is hereby remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

WOLFF and FREDERICK N. YOUNG, JJ., concur.