OPINION
{¶ 1} This case presents the issue of whether a bar and its employees may be held liable for off-premises injuries to a patron, where the bar's security guard is involved in the off-premises events. The trial court believed no liability existed, and granted summary judgment to Kor Group, Inc., dba Deja Brew (Deja Brew), as well as bar employees, Dennis Chauncey and Terry Caudill.
 {¶ 2} According to the facts disclosed below, Ronald McCormick and his girlfriend, Delores, arrived at the Deja Brew Bar in Riverside, Ohio, at about 12:30 a.m. on June 22, 1999. The couple was celebrating Delores' birthday, and came to the bar to meet friends. Greg McManes was also at the bar that night, with a friend, Rob Buckholz. Terry Caudill worked as a bouncer at the bar, and knew Ronald, Greg, and Rob. However, Ronald and Greg were not acquainted.
 {¶ 3} Caudill testified that Greg was a nice guy when sober, but was loud and obnoxious when drunk. Caudill had known Greg for years and used to go drinking with him. In fact, he had been with Greg when Greg was drunk and got into a physical confrontation. Caudill also said Greg had been thrown out of bars many times and had been barred from all the bars in a nearby city.
 {¶ 4} On the evening in question, Greg came into Deja Brew twice. He first came in around 10 p.m., and was intoxicated, but was not staggering around like he did later. During a second visit, Greg became loud and obnoxious, and was asked to leave. Among the events that precipitated Greg's ejection from the bar was a shoving incident with Ronald's girlfriend.
 {¶ 5} Greg was escorted from the bar by Caudill and by Greg's friend, Rob (who had also worked bar security in the past). On the way out, Greg resisted. Dennis Chauncey (the bar manager) asked Caudill what the status of the situation was, and Caudill indicated that he had things under control. Caudill and Rob then talked to Greg outside the bar for a few minutes, trying to settle him down, but he would not listen. Subsequently, Caudill went back inside. At that point, he was approached by Ronald, who had learned about the shoving incident and wanted to talk to Greg about it. Caudill warned Ronald that if he hit Greg, he would not ever be able to come back to the bar. Caudill and Ronald both then went outside.
 {¶ 6} The accounts of what took place outside the bar differ to some extent. Ronald testified that he and Greg had a brief conversation, during which Greg apologized for shoving Delores. Ronald indicated that there were no hostilities and the two men were not combative. However, when Ronald went back towards the bar, his friend, Perry, was at the window, yelling and asking why Ronald was out there by himself. At this point, Greg went "berserk." Greg told Perry to come on out and he would kick his "fat ass." When Ronald tried to get Greg to cool down, Greg threatened to also kick his ass. At that point, Ronald tried to get back into the bar, but the door had been locked from the inside.
 {¶ 7} According to Ronald, Greg kept screaming and Ronald kept backing away. Caudill and Rob tried to intervene, but Greg shoved them away. Ron kept walking backwards, trying to avoid a confrontation. However, as Ron turned and tried to walk away, Greg grabbed his shoulder. Ron reacted by punching with his right hand, causing Greg to stumble or step backwards. Ron claimed he left the property immediately and did not even know for sure if Greg fell.
 {¶ 8} Caudill, the Deja Brew bouncer, testified that he told the bar manager to lock the doors and not let anyone else outside. After Caudill went outside the second time, he and Rob stood between Greg and Ronald for about fifteen minutes, trying to keep the two men from fighting. Greg was upset about various things and shoved Caudill and Rob the entire time. According to Caudill, Greg just wanted to fight someone and did not care who it was. Caudill indicated that he was trying to neutralize the confrontation between Greg and Ronald, and control the situation. Greg and Ron were both cussing at each other, saying they were going to "kick each others' ass."
 {¶ 9} Finally, Rob stepped aside and said he was done, that he would let Greg and Ron "do what they were going to do." At that point, however, Caudill was able to get the two men to listen. Greg then apologized to Ronald, and Ronald said, "Fine." Caudill believed the argument was over, but as Caudill turned sideways, he saw Greg reach over and grab Ronald's arm. Ronald then hit Greg. Greg fell on his buttocks, fell back, and hit his head. When this happened, the men were in the parking lot, fifteen to twenty feet from the sidewalk.
 {¶ 10} After Greg fell, Caudill opened the bar door and asked the people inside the bar to call someone. Greg was not making any movement, and was just kind of shaking. Caudill then told Ronald that he needed to leave because the police were coming and had to be able to get through. Consequently, Ronald and his girlfriend left the scene. The next morning, Ronald called the police after learning they were looking for him. Greg died a few days later, due to injuries sustained in the incident.
 {¶ 11} Caudill indicated that he did not have special training in security, nor did he think much training was required. The police had given Deja Brew some information on what to do with unruly patrons. Basically, the police said to get people out of the bar and let the police take it from there. However, no one called the police on the night in question until after Greg was injured. Caudill indicated he did not call the police because he thought he could resolve the situation.
 {¶ 12} Although Ronald was initially arrested, no charges were filed. Subsequently, Terrie McManes, administrator of Greg's estate, filed a wrongful death action against Deja Brew, Dennis Chauncey, Bruce Investments, Inc., Ronald McCormick, Frank Bruce, and Terry Caudill.
 {¶ 13} As we indicated, Deja Brew, Chauncey, and Caudill filed a motion for summary judgment, claiming they were not liable because the injury to Greg McManes occurred off the premises of Deja Brew. The trial court agreed and granted summary judgment on behalf of these three defendants. The remaining defendants were then voluntarily dismissed, and this appeal followed.
 {¶ 14} In a single assignment of error, Terrie McManes claims the trial court "erred in holding that there was no evidence to create a genuine issue of material fact as to whether Defendant/Appellees Deja Brew, et. al., assumed a duty to provide security in this case." After considering the record and applicable law, we find that even if a duty was assumed, the duty was not violated. Accordingly, the trial court judgment in favor of the bar and its employees will be affirmed.
 I {¶ 15} As a preliminary point, we note that we review summary judgment decisions de novo, i.e., we apply the standards the trial court uses. Brinkman v. Doughty (2000), 140 Ohio App.3d 494, 497. Under these standards, "summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor."Zivich v. Mentor Soccer Club, Inc., 82 Ohio St.3d 367, 369-370,1998-Ohio-389.
 {¶ 16} When recounting the facts of the case, the trial court observed that Caudill was outside for a few moments during the confrontation between Greg and Ronald, but then returned inside and locked the doors to the bar, leaving the two men outside. This was incorrect. Instead, as we noted, the undisputed facts indicate that Caudill went outside for a few moments to try to calm Greg down, and went back into the bar. At that time, Caudill talked to Ronald. Caudill then returned outside with Ronald, and the doors to the bar were locked. Caudill remained outside until after Greg was injured.
 {¶ 17} In granting summary judgment, the trial court first found that under the lease agreement, Deja Brew did not have possession or control over common areas like the parking lot and sidewalk. The court then rejected an argument that Caudill had assumed a duty to provide security. In this regard, the court remarked that "[t]here is no evidence from trial, nor can the Defendant point to evidence that Deja Brew assumed a duty to provide security. That the bouncer for Deja Brew remained outside for a few moments is not a basis upon which this Court can find a genuine issue of material fact exists as to assumption of the duty to provide security."
 {¶ 18} As an initial matter, we think the trial court meant to refer to Plaintiff, rather than Defendant, when it made the above comments. Specifically, the Plaintiff (not the Defendant) would have been in the position of arguing that Deja Brew assumed the duty to provide security.
 {¶ 19} In any event, the trial court did rely several times on the incorrect assumption that Caudill had returned inside and locked the doors. For example, the court stated that McManes could not have reasonably relied on the bouncer's assumption of duty. In this context, the court said that "McManes was escorted outside the bar before the violence occurred. McManes cannot initiate a violent altercation after the bouncer returns inside and locks the doors for the safety of the patrons inside and then reasonably rely on the few minutes the bouncer remained outside as an assumption of duty." Also in this vein, the court commented that "by locking the doors to keep out the confrontational parties, the bouncer's actions indicate a responsibility for security to the patrons in the Deja Brew establishment, not the adjacent parking lot."
 {¶ 20} McManes argues on appeal that these errors in fact-finding require reversal of the summary judgment decision. In this regard, McManes relies on Doe v. Cub Foods (1996), 115 Ohio App.3d 473, which held that a supermarket had assumed a duty to provide security for its patrons, even though the lease agreement indicated that the parking lot and sidewalks were common areas. Appellees disagree, however. They contend, instead, that Cub Foods was incorrectly decided and has since been modified.
 {¶ 21} The Cub Foods case was before the Tenth District Court of Appeals on two occasions. First, in 1995, the Tenth District upheld the liability of Cub Foods for an assault that occurred in Cub's parking lot. Doe v. Cub Foods (May 25, 1995), Franklin App. No. 94APE07-1005, 1995 WL 318776, *5. The case was then remanded to the trial court. Shortly thereafter, the Ohio Supreme Court decided Simpson v. Big BearStores Co., 73 Ohio St.3d 130, 1995-Ohio-203. In Simpson, the Ohio Supreme Court held that:
 {¶ 22} "[a] business owner has a duty to warn or protect its business invitees from criminal acts of third parties when the business owner knows or should know that there is a substantial risk of harm to its invitees on the premises in the possession and control of the business owner. The duty does not extend to premises not in the possession and control of the business owner." Id. at syllabus.
 {¶ 23} During remand of the Cub Foods case, the trial court decided that Simpson was controlling. Consequently, summary judgment was granted in favor of Cub Foods. See Doe v. Cub Foods (1996),115 Ohio App.3d 473, 475. The case was then again appealed to the Tenth District Court of Appeals. Id.
 {¶ 24} On the second appeal, the Tenth District found that the lessor, like the lessor in Simpson, was responsible for maintaining common areas. Id. at 476. Nonetheless, the Tenth District also concluded that Simpson did not foreclose a finding of liability on Cub Foods' (the lessee's) part. Specifically, the Tenth District stated that:
 {¶ 25} "[i]n the present case, evidence was submitted to the jury that appellee had assumed the duty to provide security in the area of the parking lot immediately in front of the store where the attack upon appellant occurred. In fact, the jury was instructed that they could find appellee liable if they found that appellee had assumed the duty to provide security. Although the facts of the present case show that appellee did not have `possession and control' of the parking lot, this court finds, as it did originally, that there was evidence before the jury from which they could have concluded that appellee had assumed the duty to provide security in the parking lot. This court does not read theSimpson case to foreclose the possibility that one not in possession and control of a premises could nevertheless assume a duty with regard to that property. Because of the facts of Simpson, and the clear duty set forth in the lease that obligated the landlord to provide security, the issue of assumption of a duty as a basis for liability was not presented to, or decided by, the court. Therefore, this court concludes that the trial court erred in granting judgment in favor of appellee on the basis that the Supreme Court's holding in Simpson mandated such a ruling." Id. at 476.
 {¶ 26} Thus, under Doe, lessees may be held liable for injuries in common areas where they assume a duty for security in those areas. Appellees claim, however, that the Tenth District Court of Appeals later modified Cub Foods to require, as a predicate for liability, that the invitee relied on the lessee's assumption of duty. The case Appellees cite for this proposition is Albright ex rel. Albright v. University ofToledo (Sept. 18, 2001), Franklin App. No. 01AP-130, 2001 WL 1084461.
 {¶ 27} Upon consideration, we do not find that Cub Foods has been modified. Albright involved a concert patron who was stuck by an automobile while crossing a public street between concert premises and a parking lot. Both were owned by the University of Toledo. 2001 WL 1084461, *1. The Tenth District first found that a duty to maintain the premises and provide reasonably safe ingress and egress does not extend to situations where an invitee/pedestrian is injured on non-owned premises (a public street) while crossing between two disconnected portions of owned premises. Id. at *3-4. Specifically, the court found that the pedestrian was:
 {¶ 28} "a business invitee who attempted to cross non-owned premises in order to get to the owned premises. The university neither controlled nor possessed the property upon which the accident took place. Further, * * * a business owner is not liable to third parties for injuries occurring on a public road while the third party is attempting to enter its premises. In addition, * * * the university could not stop vehicles from rightfully using a public street or make the public street safe for business invitees who voluntarily choose to cross when vehicles are rightfully using such street." Id. at *4.
 {¶ 29} In Albright, the plaintiffs also argued alternately that even if the University did not have any original duty to business invitees who crossed public roads, the University had assumed such a duty. In considering this argument, the Tenth District Court of Appeals noted its prior holding in Cub Foods that a store may assume a duty to provide off-premises security, even if it does not possess and control the area. The Tenth District also noted its prior holding that Simpson did not foreclose this theory of liability. Id. at *8. Then, without modifying Cub Foods in any way, the Tenth District found, as a factual matter, that the University of Toledo had not assumed a duty toward pedestrians who crossed public streets. Id. In particular, the court found no evidence that security personnel were present at the location. Furthermore, while security personnel were assigned to help with vehicular traffic, the plaintiffs had conceded that these personnel were simply helping vehicles exiting various "VIP" parking lots and were not providing in any way for the safety of pedestrians. Id. These conclusions, by themselves, were fatal to the plaintiffs' claims.
 {¶ 30} After finding that the University had not voluntarily assumed a duty to pedestrians, the Tenth District also discussed the fact that in situations where one voluntarily assumes a duty to perform, the injured party must reasonably rely upon the assumption to be owed a duty of ordinary care. Id. at *9. In this regard, the Tenth District found no evidence of such reliance because the plaintiffs had not seen any security personnel helping people cross the street, nor were they aware of any University policy to provide security. Id.
 {¶ 31} As we said, we do not find this to be a modification of CubFoods. Instead, the court was simply indicating, as an additional point, that even if the University had assumed a duty to provide security, the plaintiffs failed to present evidence that they had reasonably relied on the assumption.
 {¶ 32} We could disagree with the result in Cub Foods, but we see no reason to quarrel with the conclusions of the Tenth District. We agree that a landowner can voluntarily assume a duty to provide security in areas where the landowner has no contractual obligation. Furthermore, this holding is consistent with the general view we expressed in Heys v.Blevins (June 13, 1997), Montgomery App. No. 16291, 1997 WL 335564. In that case, a woman was assaulted inside a hair salon and was then dragged outside, where the assault continued for several minutes. 1997 WL 335564, *1. Despite watching the entire proceeding, the owner did nothing to prevent the initial assault, or to stop the further assault, or to help the victim after the assault. Citing Simpson, as well as Section 314 of the Restatement 2d of Torts, we held that the:
 {¶ 33} "special relationship between business owners and their invitees gives rise to a duty on the part of business owners to `rescue' and/or aid injured invitees just as this special relationship gives rise to a duty on the part of business owners to correct dangerous conditions on their premises and to safeguard invitees from criminal acts of third persons. The rationale for imposition of these duties is the same — the store owner is deriving some economic benefit from the presence of the customer and ensuring that invitees are safe is a cost of doing business. Of course, a business owner's duty to rescue and/or aid an injured invitee is, as with the latter two duties, limited to instances where the business owner knew or should have known that the invitee was injured." 1997 WL 335564, *7.
 {¶ 34} In the context of the case at hand, we concluded that there were no factual issues preventing summary judgment on the duty to safeguard (which we classified as a "preemptive duty"). Id. We did find that summary judgment was improper regarding the duty to rescue and/or aid (which we classified as a "contemporaneous duty"). Id.
 {¶ 35} Based on the above discussion, we agree with the Tenth District Court of Appeals that under proper circumstances, a business owner who voluntarily assumes the duty to provide off-premises security may be liable for injuries sustained by an invitee. Under Hey, the owner may also be liable for a failure to rescue or aid an invitee. However, the fact that we agree does not mean that summary judgment in the present case was improper. Specifically, this case does not include circumstances warranting recovery, because Greg McManes was no longer an invitee of Deja Brew at the time of his injury. Instead, due to Greg's expulsion from the bar, his status was merely that of a trespasser or licensee.
 {¶ 36} "To establish actionable negligence, one must show in addition to the existence of a duty, a breach of that duty and injury resulting proximately therefrom. * * * The existence of a duty in a negligence action is a question of law for the court to determine."Mussivand v. David (1989), 45 Ohio St.3d 314, 318.
 {¶ 37} Concerning a landowner's legal duty, the Ohio Supreme Court continues to follow the rule that the scope of the duty is defined by the status of those who enter the owner's land. See, e.g., Gladon v. GreaterCleveland Regional Transit Auth., 75 Ohio St.3d 312, 315, 1996-Ohio-137. "Invitees are persons who rightfully come upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner." Id. However, an invitee's status is not absolute. Instead, "it is limited by the landowner's invitation." Id. In this vein, the Oho Supreme Court has stressed that a visitor:
 {¶ 38} "`has the status of an invitee only while he is on the part of the land to which his invitation extends — or in other words, the part of the land upon which the possessor gives him reason to believe that his presence is desired for the purpose for which he has come.
 {¶ 39} "* * *
 {¶ 40} If the invitee goes outside of the area of his invitation, he becomes a trespasser or a licensee, depending upon whether he goes there without the consent of the possessor, or with such consent.'" Id., citing 2 Restatement of the Law 2d, Torts (1965) 181-182, Section 332, Comment l.
 {¶ 41} In a situation similar to the present, the Twelfth District Court of Appeals concluded that a bar patron was no longer an invitee when he was ejected from the premises for fighting. See Scott v. StablesRestaurant and Entertainment Center, Inc. (Mar. 22, 1999), Clermont App. No. CA98-06-043, 1999 WL 160949, *2. In Scott, the plaintiff was allegedly assaulted in the parking lot after being ejected, and sued the bar for failing to exercise reasonable care in selling him alcohol and for failing to provide assistance and/or medical care. Id. at *1. However, the Twelfth District found that the plaintiff became a licensee or trespasser once he was banned from the premises. Id. As a result, the bar owed only a duty to "`refrain from willful, wanton, or reckless conduct'" that was likely to injure the plaintiff. Id. at *2, quotingGladon, 75 Ohio St.3d at 317.
 {¶ 42} Likewise, in the present case, once Greg was ejected from the bar, Deja Brew and its employees owed only a duty to refrain from willful, wanton, or reckless conduct that would injure him. However, there was no evidence of any such conduct. To the contrary, the bar employee (Caudill) simply tried to stop a fight, and believed he was successful. Unexpectedly, Greg grabbed the arm of the other participant, who then threw one punch that caused Greg to fall and sustain injury. We see nothing in these circumstances to indicate any type of wilful, wanton, or reckless conduct. Accordingly, even if we accept the premise that the bar assumed a duty to provide security in the parking lot, no breach of duty occurred.
 {¶ 43} McManes argues that factual issues were also raised through the affidavit of a security expert, who said that Caudill breached accepted security standards by allowing Ronald McCormick to exit the bar and engage in a fifteen to twenty minute confrontation, by locking both parties out of the bar, and by failing to prevent a reasonably foreseeable assault. However, even accepting these facts as true, they indicate negligence, at most, not willful, wanton, or reckless conduct.
 {¶ 44} In urging that summary judgment be upheld, Deja Brew and its employees contend that summary judgment was proper, based on the doctrine of primary assumption of the risk, as well as the fact that Greg McManes' death was proximately caused by his own voluntary intoxication.
 {¶ 45} Voluntary intoxication has been held to be a primary assumption of the risk, barring recovery for negligence. See Cole v.Broomsticks, Inc. (1995), 107 Ohio App.3d 573, 576-77 (underage patron's assumption of risk of intoxication barred recovery against bar for injuries he sustained in an auto accident after leaving the bar). The same result also occurs in Dramshop Act cases involving injured adult drinkers, as the Ohio Supreme Court has refused to allow such parties to maintain actions against liquor permit holders. See Smith v. The 10thInning (1990), 49 Ohio St.3d 289. The Ohio Supreme Court has recently extended this prohibition to underage adult drinkers as well. Klever v.Canton Sachsenheim, Inc., 86 Ohio St.3d 419, 420, 1999-Ohio-117. However, we need not consider these issues, since the present case does not involve a Dramshop Act claim.
 {¶ 46} In view of the preceding discussion, we find that the trial court did err in several factual findings. However, the error was harmless, since any recovery on behalf of Greg McManes was precluded by his status as a licensee or trespasser and the absence of willful, wanton, or reckless conduct on the part of the bar or its employees. Accordingly, the single assignment of error is overruled, and the judgment of the trial court is affirmed.
FAIN, P.J., and WOLFF, J., concur.