OPINION
{ ¶ 1} In this case, David I. Charney appeals from the judgment of the Montgomery County Common Pleas Court overruling his Motion for Summary Judgment and sustaining a Motion for Summary Judgment on behalf of the defendant, Nephrology Associates of Dayton, Inc.
{ ¶ 2} The record reflects that David I. Charney ("Dr. Charney") entered into a two-year employment agreement with his former employer, Nephrology Associates of Dayton, Inc. ("NAD") on February 1, 2002. The provisions of that contract were extended for the period beginning April 12, 2004 through June 30, 2005.
{ ¶ 3} Under the contract, Plaintiff would be entitled to severance compensation if he met the following conditions of provision 9.G.:
{ ¶ 4} "In the event of the termination of the Employee's employment under this Agreement by the Corporation, including the expirationthereof and, the Employee and the Corporation do not mutually agree that the Employee shall become a shareholder of the Corporation, then the Corporation shall be obligated to pay to the Employee by way of severance pay an amount equal to his regular compensation hereunder for a period of two (2) months." (Emphasis added.) (Charney Compl. Ex. A at 6.)
{ ¶ 5} In addition, provision 9.E. of the Employment Agreement provides the following circumstance for terminating the contract:
{ ¶ 6} "(ii) After the first three (3) months of the term of this Employment Agreement, either the Corporation or the Employee may terminate this agreement upon giving one hundred twenty (120) days prior written notice from one party to another." (Charney Compl. Ex. A at 5.)
{ ¶ 7} In February of 2005, Dr. Charney accepted a position with Group Health Permanente, P.C. in Seattle, Washington to commence after June 30, 2005. (Charney Second Aff. ¶ 2.) At that time, he notified NAD that he would be leaving the defendant's practice and that he anticipated his departure to be the end of June 2005. (Klein Aff. ¶ 5.)
{ ¶ 8} After notifying NAD that he planned to leave the practice but before the expiration of his contract, Dr. Charney asserted his eligibility for severance pay in the amount of $29,166.67 pursuant to the Employment Agreement, provision 9.G. NAD denied Dr. Charney's demand. As a result, Dr. Charney filed his complaint on July 1, 2005, to which NAD responded on July 15, 2005.
{ ¶ 9} Both Dr. Charney and NAD filed cross-motions for summary judgment. On December 20, 2005, the Common Pleas Court of Montgomery County overruled Dr. Charney's Motion for Summary Judgment and sustained the Motion for Summary Judgment on behalf of NAD. In its decision, the trial court found that Dr. Charney was not owed severance pay, for the language in Section 9.G. of the Employment Agreement "unambiguously" obligated the employer, i.e., NAD, to make severance payments "only in an event on termination by the Corporation." The court further found that Dr. Charney's informing NAD that he would be leaving the practice at the end of June 2005 triggered Section 9.E. of the Employment Agreement and terminated his contract of employment without breach.
{ ¶ 10} On appeal, Dr. Charney raises two assignments of error: 1) The trial court erred in denying the plaintiff's motion for summary judgment; and 2) The trial court erred in granting the defendant's motion for summary judgment. As an appellate court, our review of trial court decisions on summary judgment is de novo, which means that "we apply the standards used by the trial court." Brinkman v. Doughty
(2000), 140 Ohio App.3d 494, 496. Trial courts will appropriately grant summary judgment where they find "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. WillisDay Warehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46. Upon review of the record, we find that the assignments of error are without merit. Accordingly, the judgment of the trial court will be affirmed.
{ ¶ 11} This court summarized the rules of contract interpretation as follows in Cintas Corp. v. Lehmkuhl Excavating, 2003-Ohio-2958:
{ ¶ 12} "The construction of written contracts is a matter of law. The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties. A court must give effect to the expressed intentions of the parties where a written instrument is unambiguous. Contractual language is 'ambiguous' where its meaning cannot be derived from the four corners of the contract or where the language may be reasonably interpreted in more than one way. A contract is ambiguous if the rights and duties it imposes on the parties to it are reasonably subject to conflicting interpretations." Id. at *2 (citations omitted).
{ ¶ 13} In his first assignment of error, Dr. Charney contends that the terms of provision 9.G. which state that "[i]n the event of the termination of the Employee's employment under this Agreement by the Corporation, including the expiration thereof * * * " can be satisfied in two unrelated ways: by his termination by NAD or by the expiration of the contract. This interpretation, however, fails to consider the entirety of the contract, including the bargained-for agreement between the parties as to when Dr. Charney's shareholder status must be determined. "[A] contract is to be read as a whole and the intent of each part gathered from a consideration of the whole." FosterWheeler Enviresponse, Inc. v. Franklin Cty. Convention FacilitiesAuth. (1997), 78 Ohio St.3d 353, 361, 678 N.E.2d 519. Section 17 of the Employment Agreement pertains to an employee obtaining shareholder status. In its relevant parts, it states the follwing:
{ ¶ 14} "Although it is difficult for the parties hereto to predict the future status of the professional practice of the Corporation and the success of the Employee's participation in said professional practice, it is the general intent of the Corporation to have the Employee join it as one of the equal shareholders of the Corporationafter the completion of his two (2) year term of employment as set forthherein, assuming that both parties mutually agree at that time that it is to the best interest of both parties that the Employee become a shareholder of the Corporation. Corporation agrees that periodically but not more than every six (6) months conversation will occur with Employee regarding the Employee's performance. It is understood and agreed however that no such conversation shall be advanced as a basis for a cause of action in the event shareholder status does not result to the Employee at the conclusion of the term of the Agreement and it is expressly understood that the determination of whether shareholder status will result upon the expiration of the term will be a product of many factors none of which are fixed or unalterable at any point in time and it shall remain for determination at the close of the term that it is mutually agreeable for there to be shareholder status in the Employee for such to occur." (Emphasis added.) (Charney Compl. Ex. A at 8-9.)
{ ¶ 15} From this language, it is reasonably understood that NAD and Dr. Charney agreed to make the determination of whether Dr. Charney achieved shareholder status at the end of the term of the Employment Agreement. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Kellyv. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, 509 N.E.2d 411, at paragraph one of the syllabus. As stated above, periodic conversations initiated by NAD regarding Dr. Charney's performance were not to be considered notices that he would not receive shareholder status; again, as bargained for by the parties, this determination would be made at the end of the term of employment. When the language of severance pay in Section 9.G. is read in conjunction with the language of determining shareholder status in Section 17., the most accurate interpretation giving effect to the intent of the parties is that NAD would be obligated to pay severance to Dr. Charney if it terminated his contract prior to the end of the employment terms or if it determined at the end of the contract not to make him a shareholder. In this court's opinion, neither circumstance arose.
{ ¶ 16} In his affidavit dated October 6, 2005, Dr. Lawrence W. Klein, D.O., stated that Dr. Charney informed him on or about February 24, 2005 that he was leaving NAD for a position in Seattle, Washington because his job at NAD "was just not going to work out." (Klein Aff. ¶ 5.) In a subsequent conversation, Dr. Charney made his demand for severance pay, which Dr. Klein refused based on his understanding that Dr. Charney's notice triggered Section 9.E. of the Employment Agreement — allowing for termination without breach. (Id. at ¶ 6.) Dr. Charney's only rebuttal to Dr. Klein's affidavit does not exclude him from the effect of the contract's Section 9.G. being read in conjunction with Section 17. In his second affidavit, Dr. Charney stated that he sought employment with the Seattle-based company only because NAD had determined before February 2005 that Dr. Charney would not receive shareholder status at the end of the employment term. (Charney Second Aff. ¶ 2.) This statement is inconsistent with the agreement between the two parties and lacks any specificity as to when and in what manner NAD made this determination. Based on the Employment Agreement, NAD would decide at the expiration of the contract whether to make Dr. Charney a shareholder. The facts reveal that Dr. Charney's presumption at this point of his employment was premature and inconsequential as it related to NAD's obligation to provide severance pay under Section 9.G. of the Employment Agreement.
{ ¶ 17} Furthermore, the trial court was correct in finding that Dr. Charney "negated the legal significance of his not becoming a shareholder on June 30, 2005" by giving notice to NAD in February 2005 that he was unsatisfied with his employment and had sought a new position in Seattle, Washington. In effect, the facts show that Dr. Charney removed the opportunity for NAD to terminate his employment or make a determination at the end of his employment as to whether he should become a shareholder. The possibility of Section 9.G. being triggered was made void.
{ ¶ 18} Accordingly, Dr. Charney's first assignment of error is overruled.
{ ¶ 19} In his second assignment of error, Dr. Charney asserts that the trial court erred when it found that his conduct, i.e., announcing in February 2005 that he would be leaving NAD's practice, caused the contract to expire without there being an opportunity for NAD to offer him shareholder status. More specifically, Dr. Charney claims that it was NAD's conduct that was the cause. In his second affidavit, Dr. Charney stated that he signed the contract with Group Health Permanente, P.C. in Seattle, Washington in February 2005 because NAD had already decided not to make him a shareholder. (Charney Second Aff. ¶ 2.) According to Dr. Charney, this assertion, although in direct conflict with his previous affidavit in which he stated that neither he nor NAD had terminated the agreement, was sufficient to create an issue of fact and defeat NAD's Motion for Summary Judgment. (Charney Aff. ¶ 2.)
{ ¶ 20} We find Dr. Charney's argument to be unpersuasive. As stated above, Section 9.G. of the Employment Agreement must be read in concert with Section 17.; thus, NAD was not obligated to pay severance to Dr. Charney, unless at the expiration of the contract, it determined not to offer him shareholder status. Thus, it cannot reasonably be said that NAD's alleged conduct in February brought about execution of the severance pay provision when NAD was not required to decide on Dr. Charney's shareholder status until June 30, 2005.
{ ¶ 21} Instead, the facts establish that Dr. Charney's February 2005 announcement of his leaving and taking another position only triggered application of Section 9.E. This announcement came one hundred twenty (120) days prior to his anticipated date of leaving; as a result, Dr. Charney terminated the Employment Agreement and avoided breach. In the end, Dr. Charney's conduct effectively prevented NAD from having the opportunity to terminate his employment or to wait until the expiration date of his Employment Agreement to withhold shareholder status, thus not obligating NAD to provide severance pay pursuant to Section 9.G.
{ ¶ 22} Accordingly, Dr. Charney's second assignment of error is overruled.
{ ¶ 23} Based on the preceding discussion, the first and second assignments of error are overruled, and the judgment of the trial court is affirmed.