[Cite as *Peterson v. Amigo Mobility Internatl., Inc.*, 2013-Ohio-3933.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| DELLA MAE PETERSON | : | Appellate Case No. 25604 |
| | : | |
| Plaintiff-Appellant | : | Trial Court Case No. 2012-CV-1891 |
| | : | |
| v. | : | (Civil Appeal from |
| | : | Common Pleas Court |
| AMIGO MOBILITY INTERNATIONAL, | : | |
| INC. | : | |
| | : | |
| Defendant-Appellee | : | |

. . . . . . . . . . .

OPINION

Rendered on the 13th day of September, 2013.

. . . . . . . . . . .

SEAN BRINKMAN, Atty. Reg. #0088253, and AARON G. DURDEN, Atty. Reg. #0039862, Durden Law, L.P.A., L.L.C., 10 West Monument Avenue, Dayton, Ohio 45402
     Attorneys for Plaintiff-Appellant

JOSEPH F. NICHOLAS, Atty Reg. #0038053, and ELAINE TSO, Atty Reg. #0081474, Mazanec, Raskin & Ryder Co., L.P.A., 100 Franklin's Row, 34305 Solon Road, Cleveland, Ohio 44139
     Attorneys for Defendant-Appellee

. . . . . . . . . . .

CELEBREZZE, JR., J. (By Assignment):

{¶1} Plaintiff-appellant, Della Mae Peterson ("plaintiff"), appeals from a summary judgment rendered in favor of defendant-appellee, Amigo Mobility International, Inc. ("Amigo Mobility").

## I.   Factual and Procedural History

{¶2} On December 5, 2011, plaintiff went to a Wal-Mart located on Hoke Road in Montgomery County, Ohio, to obtain money orders and pay her bills.  Plaintiff went to Wal-Mart on a monthly basis for the same purpose over the previous years.  Each time she went to Wal-Mart, she used a motorized shopping cart because of problems with her knees and loss of balance.  When plaintiff entered the Wal-Mart on the day of the incident, she discovered that there was only one motorized shopping cart available for use.

{¶3} After sitting on the motorized shopping cart, plaintiff moved through the store to the customer service desk.  After obtaining a money order, she completed a U-turn and moved the motorized shopping cart against the wall.  According to plaintiff, she then turned off the motorized shopping cart and attempted to exit the cart.  However, before she was able to exit the cart, her shoe caught underneath the cart and, although the power was turned off, she alleges the cart rolled forward and backward over her ankle.  Plaintiff submits that the shopping cart continued to move, with the power off, until the shopping cart tilted onto her.  As a result, she claims that she suffered bodily injury, including injury to her knees, back, ribs, and buttocks.  The motorized shopping cart at issue was not set aside after plaintiff's fall. Further, plaintiff could not identify the brand of motorized cart she used on the day in question.

{¶4} On March 13, 2012, plaintiff commenced this matter by filing a lawsuit against defendants Wal-Mart Stores, Wal-Mart Supercenter Store No. 5409 (the "Hoke Road Wal-Mart") (collectively "Wal-Mart"), Community Insurance Company, the United States Department of Health and Human Services, and defendant-appellee, Amigo Mobility.[1] Plaintiff's five-count complaint, as amended, asserted as its third claim product liability against Amigo Mobility. Plaintiff claims she sustained injuries caused by a defect in a motorized shopping cart that she alleges was manufactured by Amigo Mobility. The product defect alleged in her complaint was that the "cart moved by itself and moved after the power was turned off."

{¶5} On December 7, 2012, Amigo Mobility filed a motion for summary judgment arguing that plaintiff failed to establish that (1) Amigo Mobility manufactured the motorized shopping cart used by plaintiff on December 5, 2011; (2) there was, in fact, a defect in the product manufactured and sold by Amigo Mobility; (3) such defect existed at the time the product left the hands of Amigo Mobility; and (4) the defect was the direct and proximate cause of plaintiff's injuries. Amigo Mobility further argued that "regardless of who manufactured the motorized shopping cart involved in the incident at the Hoke Road Wal-Mart, plaintiff voluntarily assumed the risk of using a cart that she admitted was missing a wheel before she got on it."

{¶6} On December 28, 2012, plaintiff filed a memorandum in opposition to Amigo Mobility's motion for summary judgment. On January 8, 2013, the trial court granted Amigo Mobility's motion for summary judgment, finding there was "no dispute of the fact

---

[1] Defendant Wal-Mart settled with plaintiff and was dismissed from the case.

that the motorized shopping cart plaintiff used on December 5, 2011, was not manufactured by [Amigo Mobility] based on the evidence presented."

{¶7} Plaintiff now brings this timely appeal, raising one assignment of error for review.

## II. Law and Analysis

### A. Summary Judgment

{¶8} In her sole assignment of error, plaintiff argues that the trial court erred in granting summary judgment in favor of Amigo Mobility.

{¶9} We review a grant of summary judgment de novo, which means that "we apply the standards used by the trial court." *Brinkman v. Doughty*, 140 Ohio App.3d 494, 497, 748 N.E.2d 116 (2d Dist.2000). Summary judgment is appropriate when a trial court correctly finds "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶10} Under the statutory cause of action for products liability provided by R.C. 2307.73, manufacturers are liable for compensatory damages based on product liability claims only where a claimant establishes all the following elements by a preponderance of the evidence:

> (1) * * *  the manufacturer's product in question was defective in
> manufacture or construction as described in section 2307.74 of the Revised

Code, was defective in design or formulation as described in section 2307.75 of the Revised Code, was defective due to inadequate warning or instruction as described in section 2307.76 of the Revised Code, or was defective because it did not conform to a representation made by its manufacturer as described in section 2307.77 of the Revised Code;

(2) A defective aspect of the manufacturer's product in question as described in division (A)(1) of this section was a proximate cause of harm for which the claimant seeks to recover compensatory damages;

(3) The manufacturer designed, formulated, produced, constructed, created, assembled, or rebuilt the actual product that was the cause of harm for which the claimant seeks to recover compensatory damages

{¶11} Subsection (B) of R.C. 2307.73 further states that

[i]f a claimant is unable because the manufacturer's product in question was destroyed to establish by direct evidence that the manufacturer's product in question was defective or if a claimant otherwise is unable to establish by direct evidence that the manufacturer's product in question was defective, then, consistent with the Rules of Evidence, it shall be sufficient for the claimant to present circumstantial or other competent evidence that establishes, by a preponderance of the evidence, that the manufacturer's product in question was defective in any one of the four respects specified in division (A)(1) of this section.

{¶12} In *Moore v. Freedom Foods, Inc.*, 2d Dist. Montgomery No. 12191, 1991 WL 21515 (Feb. 21, 1991), this court stated, in pertinent part:

> Regardless of the theory which liability is predicated upon * * * it is obvious that to hold a producer, manufacturer, or seller liable for injury caused by a particular product, there must first be proof that the defendant produced, manufactured, sold, or was in some way responsible for the product.

*Id*. at ¶ 3-4.

{¶13} Accordingly, we begin our analysis by addressing Amigo Mobility's contention that summary judgment was appropriate in this matter based on plaintiff's failure to show that the motorized shopping cart she used on December 5, 2011, was an Amigo Mobility product. Pursuant to R.C. 2307.73(B), since the actual motorized shopping cart at issue was not set aside following the alleged incident, plaintiff is permitted to utilize circumstantial evidence, including her own testimonial evidence, to support her claim that the motorized shopping cart at issue was an Amigo Mobility product and that it behaved in the manner in which she described. If, however, her testimonial evidence does not support her claim that the motorized shopping cart at issue was an Amigo Mobility product, the mere fact that Amigo Mobility is a manufacturer of the type of product in question is not proof that Amigo Mobility manufactured the actual product in question. *See* R.C. 2307.73(C).

{¶14} Here, plaintiff argues that there is a genuine issue of material fact as to whether the motorized shopping cart at issue was manufactured by Amigo Mobility. Specifically, she contends that her deposition testimony and descriptions of the motorized

shopping cart she used on December 5, 2011, provided circumstantial evidence that Amigo Mobility manufactured the product at issue.

{¶15} On review, we find plaintiff's argument to be unpersuasive. At her deposition, plaintiff admitted that she could not remember or identify the brand of motorized shopping cart she used on the day in question.

Q. Why do you think that the riding shopping cart that you used that day was an Amigo?

A. What's that?

Q. An Amigo brand shopping cart?

A. What do you mean?

Q. Well, do you know the name of the shopping cart?

A. No.

Q. Okay. So you don't know the name of the shopping cart?

A. No.

Q. Did you see a name on the shopping cart?

A. No.

* * *

Q. Did anyone tell you what the name was?

A. Uh-uh [shaking head no.]

Q. Did you ask anyone what the name was?
A. Uh-uh [shaking head no.]

{¶16} Additionally, plaintiff took no photographs of the motorized shopping cart involved in the incident. Therefore, plaintiff's testimony describing the motorized shopping

cart she used on December 5, 2011, represents the only circumstantial evidence available for review.

{¶17} During her deposition, plaintiff described the shopping cart at issue as follows:

Q. Okay. Can you describe those motorized shopping carts that you used at that Hoke Road Wal-Mart?

A. I don't understand. I don't know what to say.

Q. Well, let's start with what color they are.

A. They got the wheelchair basket of the riding carts, and there is a handle you turn to move it around. You twist it, and when you twist it, it moves the shopping cart around the building into the store.

* * *

Q. Okay. Does it have handle bars or a steering wheel?

A. Handle bars and a steering wheel.

* * *

Q. And there are handle bars where?

A. In the middle, the middle of the shopping cart basket. The basket right in front, and the handle bars is right there in the middle. You turn it either way, or you twist the riding cart to go either way, directions, where I want it to go.

* * *

Q. Okay. And again, I didn't hear an answer earlier when I asked what color it is. Can you describe what color these are?

A. It is gray.

Q. Gray?

A. Yes, uh-huh.

Q. All over gray?

A. It is gray and yellow handle bars.

Q. Okay. So the handle bars are yellow?

A. Uh-huh.

* * *

Q. Okay. So the only way the shopping cart moves is by the handle bars?

A. Uh-huh.

Q. Okay. Now if you want to move forward in the motorized cart that you used, how do you do that?

* * *

A. I turn the handle.

* * *

Q. So what do you do to make it go forward, let's say straightforward, what do you do to the handles?

A. Turn it going downward.

Q. Both the handles? Because you are gesturing —

A.   Yes I use both of the handles, and it goes straightforward, and it moves forward, and then, when you turn it backwards towards your chest, it will go backwards.

{¶18} Plaintiff further testified that the motorized shopping cart she used had metal arm rests connected to the padded seat-back.

{¶19} Significant to our review is plaintiff's testimony that she did not notice the name of the company that manufactured the motorized shopping cart at issue at the time she used the cart on December 5, 2011.  At no point in plaintiff's deposition testimony did she state that the motorized shopping cart was an Amigo Mobility product or that she thought the motorized shopping cart was an Amigo Mobility product.  The only thing plaintiff was adamant about was that she had used a gray motorized shopping cart with yellow handles.  However, plaintiff's description of the motorized shopping cart that allegedly caused her injuries does not match the Amigo Mobility product that was available in the Hoke Road Wal-Mart at the time of plaintiff's accident.

{¶20} The affidavit of Beth Thieme, Vice President of Amigo Mobility, states, "the only type of Amigo Mobility motorized shopping carts delivered to [the Hoke Road Wal-Mart] are the Amigo ValueShopper." Allen Bussinger, Director of Engineering, Research & Development for Amigo Mobility, stated the same.  Mr. Bussinger further stated that the Amigo ValueShopper does not have yellow handle bars and does not have arm rests.  Rather, the Amigo ValueShopper is operated by a black throttle lever that is attached to the steering mechanism.  Additionally, contrary to plaintiff's testimony that the motorized shopping cart she used on December 5, 2011, required her to "twist" both handles

away from her body to make the cart move forward, Mr. Bussinger stated, "in order to move the Amigo ValueShopper forward the lever on the right hand side is pulled toward the user." According to Mr. Bussinger, "there is no mechanism for operating the Amigo ValueShopper which involves rolling handlebars in the direction of the desired motion."

{¶21} Based on the foregoing testimony, we find that when considered in conjunction with Mr. Bussinger's affidavit and the photographs of the Amigo ValueShopper attached to Amigo Mobility's motion for summary judgment, it is evident that plaintiff's description of the motorized shopping cart she used on December 5, 2011, establishes that she simply did not use an Amigo Mobility motorized shopping cart on the date in question.

{¶22} Because plaintiff has failed to show any relationship between the motorized shopping cart in question and Amigo Mobility, her claims against Amigo must fail, and summary judgment is appropriate at this time.

{¶23} Appellant's sole assignment of error is overruled.

Judgment affirmed.

. . . . . . . . . .

DONOVAN and HALL, JJ., concur.

(Hon. Frank D. Celebrezze, Jr., Eighth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).


Copies mailed to:

Sean Brinkman
Aaron G. Durden
Joseph F. Nicholas
Elaine Tso
Hon. Timothy N. O'Connell