DePUGH, Admr., et al., Appellants,

v.

SLADOJE et al., Appellees.

[Cite as *DePugh v. Sladoje* (1996), 111 Ohio App.3d 675.]

Court of Appeals of Ohio,
Second District, Miami County.

No. L–93–227.

Decided June 14, 1996.

676

*Canice J. Fogarty,* for appellants.

*Mark K. Sladoje, Jr.,* pro se.

*Katherine Kemp Severt,* for appellee Jose M. Lopez.

*David C. Greer,* for appellee Raymond L. Landis.

*Timothy Van Eman,* for appellee William W. Lamkin.

WOLFF, Judge.

Steven K. DePugh appeals from a judgment of the Miami County Court of Common Pleas which granted summary judgment in favor of attorneys Mark Sladoje, Jr., Jose Lopez, Raymond Landis, and William Lamkin on DePugh's legal malpractice claims.

The facts and procedural history are as follows.

Steven DePugh's son, Robert, was killed in a motorcycle accident on August 27, 1991, in Miami County. The decedent was survived by his father, his common-law wife, Lorina Burden, and a minor daughter. DePugh was appointed to act as administrator of his son's estate in November 1991. As administrator, he filed a wrongful death action against the Miami County Board of Commissioners alleging that the county's negligence in failing to adequately mark the road on which his son was killed had caused his son's death. DePugh also collected $50,000 from another motorist involved in the accident, and he distributed the estate's assets to the beneficiaries, including himself.

Sometime in 1992, a dispute arose between DePugh and his son's common-law wife, Burden, regarding the administration of the estate. Attorneys Landis and Lopez represented DePugh as administrator and as a beneficiary of the estate, and Mark Sladoje, Jr., represented Burden as a beneficiary in her effort to have DePugh removed as administrator. As a result of the dispute between Burden and DePugh, DePugh agreed to resign as administrator in order that Burden could be appointed as the new administrator of the estate. DePugh resigned in January 1993, and his attorneys voluntarily dismissed the wrongful death action which had been filed on his behalf as administrator of the estate.

When the initial complaint against the Miami County Board of Commissioners was dismissed on February 12, 1993, prior to the expiration of the two-year statute of limitations for a wrongful death action, the attorneys involved on behalf

of both parties apparently misperceived that the savings statute set forth in R.C. 2305.19 applied. The savings statute gives one who voluntarily dismisses a case after the statute of limitations has expired one year within which to refile the case. If the savings statute had applied, it would have given the estate one year from the date of the dismissal to refile the case, or until February 12, 1994. Because the case was dismissed prior to the expiration of the statute of limitations, however, the savings statute did not apply and the case needed to be refiled by the time of the expiration of the original statute, or by August 27, 1993.

The estate did not have an administrator for several months following De-Pugh's resignation. Burden did not file an application for authority to administer the decedent's estate until September 2, 1993. By that time, the statute of limitations on the wrongful death action had run, although none of the attorneys involved recognized that fact. The probate judge approved Burden's application on September 16, 1993. In January 1994, the attorneys for both DePugh and Burden filed wrongful death actions against the Miami County Board of Commissioners, apparently believing that the statute of limitations was about to expire. By this time, attorney Lamkin represented Burden on the wrongful death claim. The trial court dismissed the action filed by DePugh's attorney based upon the expired statute of limitations. Later, a settlement in the amount of $10,000 was entered in the action filed by Burden's attorney. DePugh believes that the settlement did not reflect the true value of the claim against the Miami County Board of Commissioners, and that Burden's attorneys agreed to the settlement because they realized that the statute of limitations had expired prior to the filing of their complaint.

In August 1994, DePugh was reappointed administrator of the estate. On August 24, 1994, he filed a legal malpractice action against the attorneys who had represented him as administrator and as a beneficiary of the estate and against Burden's attorneys. Each of the attorneys filed a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim. The trial court treated the motions as motions for summary judgment and sustained the motions as to each of the defendants on February 3, 1995.

DePugh asserts two assignments of error on appeal.

"I. The trial court erred to the substantial prejudice of the appellants when awarding the appellees, Landis and Lopez, summary judgment."

DePugh contends that the trial court erred in granting summary judgment in favor of defendants Landis and Lopez because he had created a genuine issue of material fact about the existence of an attorney-client relationship with each of these defendants and about their breach of a duty owed to him individually as a beneficiary and as administrator of his son's estate. He also argues that these

issues presented factual questions, rather than questions of law, and thus could not be resolved by way of summary judgment.

The elements of a legal malpractice claim are the existence of an attorney-client relationship giving rise to a duty, a breach of that duty, and damages proximately caused by the breach. *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 538 N.E.2d 1058, syllabus. Summary judgment is appropriate only if, viewing the evidence most strongly in favor of the nonmoving party, it appears from the evidence that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47.

The trial court granted summary judgment against DePugh, as administrator, on the ground that Landis and Lopez no longer represented the estate when the statute of limitations had expired, and thus DePugh had not established the existence of an attorney-client relationship between Landis, Lopez, and the estate during the relevant time period. The trial court found that summary judgment was appropriate on DePugh's claim, individually, against Landis and Lopez because the attorneys had put at issue the question of whether they had owed or breached any duty to DePugh as a beneficiary of the estate by showing that they did not represent the estate when the statute of limitations expired, and DePugh had not rebutted that assertion. The trial court concluded that rebuttal was required in the form of an expert opinion as to the existence of a duty, which DePugh had failed to provide, and, therefore, there existed no genuine issue of material fact as to the existence of such a duty.

In our judgment, the trial court properly granted summary judgment against DePugh as administrator of the estate. It was undisputed that Landis and Lopez represented the estate when DePugh initially served as administrator. It was also undisputed, however, that the attorneys withdrew as attorneys of record in the probate proceedings after DePugh asked to be removed as administrator. At that point, the attorney-client relationship between Landis and Lopez and the estate ceased. DePugh's bare assertion that the duty continued was insufficient to create a genuine issue of material fact on that issue.

Whether Landis and Lopez breached any duty to DePugh in his individual capacity as a beneficiary raises a different question. The trial court implicitly found that Landis and Lopez continued to represent DePugh in his personal capacity after he withdrew as administrator of the estate and after they withdrew from their representation of the estate. Indeed, DePugh presented letters from the attorneys which made clear that they had continued to represent him as a beneficiary of the estate. For example, Landis wrote to DePugh in February

1993 to update him on efforts to persuade Burden's attorney to file Burden's application to become the successor administrator of the estate. Lopez wrote to DePugh in September 1993 discussing Burden's appointment as administrator and the status of the wrongful death claim.

In the course of their continued representation of DePugh as a beneficiary of the estate, Landis and Lopez each told DePugh that the wrongful death action did not need to be refiled until February 1994. DePugh's affidavit indicates that he relied on these representations to his detriment. Specifically, DePugh decided when to follow up with his attorneys on Burden's appointment and the refiling of the wrongful death claim based upon his mistaken belief that the wrongful death action did not need to be refiled until February 1994. He claimed to have "logged the important dates into [his] computer so that [he] could track and monitor the progress of the case and protect the filing date" based on Landis's and Lopez's representations.

■ The documentary evidence presented created a genuine issue of material fact as to whether Landis's and Lopez's incorrect representations to DePugh about the time in which the wrongful death action needed to be refiled breached a duty owed in him in his personal capacity. In our judgment, the alleged breach of duty was sufficiently obvious to survive a motion for summary judgment without the presentation of an expert opinion.

Furthermore, we note that neither attorney contended in his motion for summary judgment that there was no genuine issue regarding the attorneys' duty because DePugh lacked an expert opinion to that effect. A party seeking summary judgment bears the responsibility of informing the trial court and the opposing party of the bases for its motion and identifying those portions of the pleadings and other documentary evidence which it believes demonstrate the absence of a genuine issue of material fact. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 114, 526 N.E.2d 798, 800–801, citing *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265, 273–274. Neither Landis nor Lopez alleged in his motion to dismiss that DePugh's claim failed for lack of an expert opinion that there was a breach of duty. Each simply contended that he was not the attorney for the estate when the statute of limitations expired, and that DePugh did not have standing to file the wrongful death action after he had been removed as administrator. Neither of these contentions required DePugh to provide an expert opinion to establish the duty owed to him in his personal capacity as a beneficiary of the estate. Because the attorney-defendants did not raise the lack of an expert opinion as a basis for summary judgment, and thus DePugh was not on notice that the need for such evidence was at issue, the trial court erred in granting the motion for summary

judgment based on the lack of expert opinion insofar as it related to Landis's and Lopez's duty to DePugh in his personal capacity.

The first assignment of error is sustained in part and overruled in part.

"II.   The trial court erred to the substantial prejudice of the appellants when awarding the appellees, Lamkin and Sladoje, summary judgment."

DePugh claims that he created a genuine issue of material fact as to whether attorneys Sladoje and Lamkin had committed legal malpractice by breaching their duty to Burden, with whom he was in privity.  We will discuss DePugh's alleged privity with Burden first because it affects DePugh's standing to sue Sladoje or Lamkin, with whom he did not have traditional attorney-client relationships.  We will then discuss whether DePugh created a genuine issue of material fact regarding his malpractice claim against these defendants.

DePugh relies upon *Elam v. Hyatt Legal Serv.* (1989), 44 Ohio St.3d 175, 541 N.E.2d 616, for the proposition that, when an individual's right to share in the proceeds of an estate has vested, he is in privity with all other similarly situated, or similarly vested, individuals.  DePugh claims that he is entitled to sue Sladoje and Lamkin for legal malpractice because both he and Burden were vested beneficiaries of the decedent's estate, and thus he was in privity with Burden, who could have maintained a malpractice action against her attorneys, Sladoje and Lamkin.

■     Although *Elam* held that an attorney may be liable to a third party who is in privity with the attorney's client, the case did not hold that all "similarly situated" persons are in privity with one another.  Rather, *Elam* held that a beneficiary with a vested interest in an estate is in privity with the fiduciary or administrator of the estate, and that the fiduciary's attorney may be liable to a vested beneficiary for damages arising from the attorneys' malpractice.  *Id.* at 177, 541 N.E.2d at 618.  Sladoje and Lamkin argue that, inasmuch as they did not represent the fiduciary for the estate and, in fact, there was no fiduciary for the estate when the statute of limitations expired, they were not in privity with DePugh under the authority of *Elam.*  This response begs the question, however, in that Sladoje and Lamkin may have committed malpractice by failing to have Burden appointed as administrator prior to the expiration of the statute of limitations.  If so, the attorneys should not be permitted to use the absence of an appointed fiduciary as a defense to a malpractice claim.

Insofar as Burden never served as administrator of the estate prior to the expiration of the statute of limitations, her claim against Sladoje and Lamkin, if any, arose in her personal capacity.  The issue, then, is whether DePugh, as administrator of the estate, may assert a malpractice claim on behalf of a beneficiary of the estate.  This question is the reverse of the one presented in

*Elam, supra,* wherein the beneficiary asserted the fiduciary's malpractice claim against the fiduciary's attorney.

In our judgment, the rationale by which the Supreme Court held in *Elam* that privity exists between the beneficiary of an estate and the fiduciary so as to support the beneficiary's legal malpractice action against the fiduciary's attorney is equally persuasive under the facts in this case. To the extent that Sladoje's and Lamkin's representation of Burden as a beneficiary of the estate compromised the estate's wrongful death claim against the Miami County Board of Commissioners, we hold that the estate may have a malpractice action against them. DePugh established that, as administrator of the estate, he was in privity with Burden as a beneficiary of the estate. One who is in privity with an attorney's client has standing to sue the attorney for legal malpractice. *Elam, supra.* As such, the trial court erred in finding that DePugh, as administrator of the estate, did not have standing to sue Sladoje and Lamkin.

The final issue for us to consider under the assignments of error, then, is whether DePugh created a genuine issue of material fact regarding Sladoje's or Lamkin's breach of duty to Burden. The roles of Sladoje and Lamkin with respect to this case are sufficiently different that we will address the summary judgment as to each attorney separately.

In early 1992, Sladoje represented Burden in her efforts to have DePugh removed as administrator of the estate. After DePugh had resigned as administrator, however, Sladoje allowed eight months to pass before he filed an application to have Burden appointed as the successor administrator, during which time the statute of limitations on the wrongful death claim expired. Moreover, there is some evidence that Landis and Lopez dismissed the wrongful death claim which they had filed on behalf of the estate at Sladoje's request. It is unclear why Sladoje requested this course of action, rather than opting for a substitution of parties when Burden was appointed administrator. Sladoje's alleged affirmative steps to have the estate's initial wrongful death claim dismissed and to have DePugh removed as administrator, coupled with his failure to have Burden appointed administrator in a timely fashion, created a genuine issue of material fact as to whether he had breached a duty owed to Burden as a beneficiary of the estate.

Lamkin's alleged breach of duty presents a more difficult question because he was not involved in Burden's effort to have DePugh removed as administrator and is not alleged to have acquiesced in the dismissal of the original wrongful death claim. The record includes evidence that Lamkin considered handling the wrongful death claim on Burden's behalf as early as February 1993, and that he had accepted the case by September 1993, but it is not clear precisely

when his representation began. It is apparent from Lamkin's correspondence with DePugh that he knew the decedent's date of death. If Lamkin represented Burden prior to August 27, 1993, when the statute of limitations expired, then a genuine issue of material fact existed as to whether Lamkin had breached his duty to Burden in miscalculating the date by which the wrongful death action needed to be filed. A genuine issue of material fact existed as to when Lamkin's representation began, which affected the duty owed to Burden. The trial court thus erred in granting summary judgment in favor of Lamkin.

Because we have held that DePugh may sue Sladoje and Lamkin in his capacity as administrator of the estate, we will not reach the issue of whether DePugh was in privity with Burden in his personal capacity, or his standing to sue Sladoje and Lamkin in his personal capacity.

The second assignment of error is sustained.

■ Several of the defendants raise the estate's settlement with the Miami County Board of Commissioners, entered after the statute of limitations had run, as a defense to DePugh's malpractice claim as it obviates DePugh's claimed injury. We will address this argument apart from the assignments of error because it affects the viability of DePugh's claims against all four of the defendants. We note that the settlement had not been approved by the probate court when summary judgment was entered, so this argument was not raised in the trial court.

The attorneys rely upon *Sawchyn v. Westerhaus* (1991), 72 Ohio App.3d 25, 593 N.E.2d 420, and *Estate of Callahan v. Allen* (1994), 97 Ohio App.3d 749, 647 N.E.2d 543, a case cited for the first time at oral argument, in support of their claim that the probate court's approval of DePugh's settlement with Miami County renders this appeal moot.

In *Sawchyn v. Westerhaus, supra,* Westerhaus had represented Sawchyn on the issue of punitive damages only in a case arising from a child's lead poisoning in an apartment building owned by Sawchyn. Sawchyn's insurance company represented him on the issue of compensatory damages. After a jury returned a verdict against Sawchyn for $30,000 in compensatory damages and $216,000 in punitive damages, he sued Westerhaus for malpractice for not having entered into settlement negotiations prior to trial in an effort to limit his liability on the punitive damages.

While the complaint against Westerhaus was pending, Sawchyn settled the original action and dismissed his appeal of the jury's verdict. Subsequently, the trial court granted Westerhaus's motion for summary judgment on the legal malpractice claim.

On appeal from the summary judgment, the Cuyahoga County Court of Appeals noted the Supreme Court's view that punitive damages may not be awarded in the absence of proof of actual damages. On the basis of that position, the court opined that Westerhaus had no reason to enter into settlement negotiations on punitive damages before the plaintiff's right to compensatory damages had been established. *Id.,* 72 Ohio App.3d at 28, 593 N.E.2d at 422. The insurance company had been unable to reach a settlement with the plaintiff on the issue of compensatory damages prior to trial. Ultimately, the court concluded that Sawchyn had waived his malpractice claim against Westerhaus because his dismissal of the appeal of the original action prevented the appellate court from eliminating any errors in that judgment and made it "impossible to calculate the value of punitive damages, if any, that would have been determined on appeal in the original [tort] action," *i.e.,* the value of the damages for which Sawchyn sought to hold Westerhaus liable in the malpractice action. *Id.* It was apparent from the court's discussion that it thought the malpractice claim was without merit.

*Sawchyn* is distinguishable from DePugh's case because, in that case, the court obviously believed that the attorney had acted reasonably in not negotiating a settlement of the punitive damages before compensatory damages had been established. It noted that punitive damages, absent proof of actual damages, are "highly irregular." *Id.* at 28, 593 N.E.2d at 422, citing *Bishop v. Grdina* (1985), 20 Ohio St.3d 26, 27, 20 OBR 213, 213–214, 485 N.E.2d 704, 704–705. Moreover, the court noted that any injustice in the punitive damages award might have been corrected on appeal, vitiating the malpractice claim, but for Sawchyn's dismissal of that appeal. The voluntary dismissal of the appeal of the underlying tort action, and not the monetary settlement of the tort action, was determinative of the malpractice claim.

In this case, on the other hand, DePugh had created a genuine issue of material fact regarding the attorneys' breach of their duty to represent him competently, as discussed *supra,* and he is currently challenging the probate court's approval of the settlement with Miami County in a separate appeal. Therefore, the reasons for which the attorney was granted summary judgment on the malpractice claim in *Sawchyn* are inapplicable to the facts of this case.

In *Estate of Callahan v. Allen, supra,* Allen, the attorney for the estate advised the children of the decedent to disclaim a portion of their inheritance, directing that property to their mother, in an effort to capitalize on the marital deduction and ultimately reduce the estate's tax liability. When the IRS disallowed the marital deduction claimed by the estate, Allen referred the estate to another attorney who advised the family to settle the dispute with the IRS because he believed that they had only a fifty-percent chance of prevailing on the claim. The

family did settle the claim, agreeing not to appeal in exchange for a reduction of the claimed tax liability. After settling the case with the IRS, the family filed a legal malpractice action against the attorney. The trial court overruled Allen's motion for summary judgment, rejecting his argument that the settlement of the claim with the IRS and the malpractice action were inconsistent. The court of appeals, however, concluded that the family had waived any claim of malpractice by not appealing the IRS decision, because in the absence of an appeal, there had been "no definitive ruling on whether the [disclaimers prepared by the attorney] were qualified to allow part of the children's inheritance to pass to decedent's spouse, thereby increasing the marital deduction." *Id.,* 97 Ohio App.3d at 752, 647 N.E.2d at 545.

Like *Sawchyn, Callahan* is distinguishable from this case in that the alleged malpractice arose in the course of strategic decisions made by the attorney, and the plaintiffs had not shown that these decisions were unreasonable. The heirs had not demonstrated that the deduction claimed on Allen's advice was not at least arguably supported by existing law.

In many cases, an attorney will be faced with strategic choices, any one of which may lead to a favorable result for his client. An attorney must make an educated guess as to which course of action is most likely to succeed. The practice of law is not an exact science, however, and generally, when a client settles a claim, an attorney should not be subject to a client's malpractice claim in an effort to obtain additional monies as long as the attorney has made reasonable decisions in handling the case and represented his client competently.

In *Sawchyn,* Westerhaus could have reasonably concluded that it was in the best interests of his client not to negotiate any settlement of the punitive damages claim against him until some amount of actual damages had been established. The plaintiffs may have failed to prove actual damages, in which case they would have had very little chance, if any, of collecting punitive damages from Westerhaus's client. Likewise, if the deduction claimed in *Callahan* was a reasonable interpretation of the tax code provisions, the question which was left unanswered by the settlement of the IRS's claim, then the attorney could be found to have exercised reasonable judgment in the performance of his duties. In *Westerhaus* and *Callahan,* the impact of the settlements was to leave unresolved the issue of the reasonableness of the attorney's actions. In both cases, however, the attorney had a plausible argument in defense of his chosen course of action. These circumstances warranted the courts' findings that the malpractice actions had been waived by the settlements of the underlying controversies.

This case is different in that filing a wrongful death claim after the statute of limitations has expired is not a supportable strategic decision, but is more in the

nature of malpractice *per se*. As such, an attorney's advice to enter into a settlement after the time for filing the underlying claim has passed does not entitle the attorney to the same deference as advice based on a strategic decision when the underlying claim is still viable. The attorneys' misperceptions of the applicable statute of limitations in DePugh's case did not represent a reasonable choice among several ways to effectively represent their respective clients' interests, and therefore were not akin to the attorneys' actions in *Sawchyn* and *Callahan* for the purpose of insulating the attorneys from a malpractice claim. Moreover, there is a legitimate question as to the voluntariness of a settlement when, due to the attorneys' errors, the plaintiff no longer has recourse to the courts if the parties' negotiations fail.

██ Accordingly, we conclude that where a settlement is entered into as a result of an attorney's exercise of his reasonable judgment in handling a case, the settlement bars a malpractice claim against the attorney. On the other hand, a legal malpractice claim is not barred by a settlement with a party in the underlying action where the attorney has acted unreasonably or has committed malpractice *per se*. In our judgment, when an attorney has made an obvious error which seriously compromises his client's claim, and a settlement is on the table (albeit an inadequate one), the client should not be forced to forgo the settlement offer as a condition of pursuing the attorney for malpractice.

Utilizing this approach, we conclude that missing the statute of limitations amounted to malpractice *per se* by the attorneys who owed a duty to the estate or its beneficiaries, so that the estate's claim is not barred by its settlement with the Miami County Board of Commissioners. We are unpersuaded, as the attorneys have argued, that our holding will result in interminable litigation or eliminate settlements as a method of dispute resolution. In its malpractice claim against the attorneys, however, the estate will, of course, have to prove that the settlement with Miami County was less than it would have recovered on a properly filed wrongful death claim.

██ The attorneys also point out that if DePugh is dissatisfied with the settlement with the Miami County Board of Commissioners to which Lorina Burden agreed while she was administrator, he can appeal from the probate court's approval of that decision. The attorneys imply that such an appeal is the proper avenue for DePugh's complaint, rather than a malpractice action. We reject this contention on the ground that it will not benefit DePugh to have the probate court's acceptance of the settlement overturned on appeal under the circumstances presented. The statute of limitations has run, and the estate has no recourse against Miami County if its settlement offer is now rejected. According to the estate's counsel at oral argument, the probate court apparently

recognized this fact, and it approved the settlement with the express condition that the settlement should have no effect on the pending malpractice action.

We note Landis's additional argument that the trial court properly granted summary judgment because the Miami County Board of Commissioners was immune from liability on the underlying wrongful death action. In other words, he contends that there was no "case in a case" as required to maintain a malpractice action. Landis relies on *Franks v. Lopez* (1994), 69 Ohio St.3d 345, 632 N.E.2d 502, in which the Supreme Court held that a county could not be held liable for failing to keep its roadways "free from nuisance" for its failure to install a traffic control device unless the installation of such a device was mandated by the Ohio Manual of Uniform Traffic Control for Streets and Highways.

Landis's motion to dismiss did not raise the county's alleged immunity in support of the motion. As we discussed under the first assignment of error, a party seeking summary judgment must inform the trial court and the opposing party of the bases for its motion so that the nonmoving party is on notice of the issues on which he has allegedly failed to create a genuine issue of material fact. *Mitseff, supra,* 38 Ohio St.3d at 114, 526 N.E.2d at 800–801. Because Landis's motion did not raise this issue, the question of whether the county had failed to install any mandated traffic control devices was not adequately developed below. Accordingly, we will not address the merits of Landis's argument that summary judgment was properly granted based on the county's alleged immunity from liability. See *State ex rel. Specht v. Oregon City Bd. of Edn.* (1981), 66 Ohio St.2d 178, 20 O.O.3d 191, 420 N.E.2d 1004.

On remand to the trial court, the defendants may raise the county's alleged immunity on the wrongful death claim and any other potential bases for summary judgment which were not raised by the defendants in their original motions as alternate bases for summary judgment.

The judgment of the trial court granting summary judgment in favor of defendants Landis and Lopez and against DePugh in his capacity as administrator of the estate will be affirmed. In all other respects, the judgment of the trial court is reversed, and the matter is remanded for further proceedings.

*Judgment accordingly.*

BROGAN, P.J., concurs.

FREDERICK N. YOUNG, J., dissents.

FREDERICK N. YOUNG, Judge, dissenting.

While I have no disagreement with the majority in their resolution of DePugh's two assignments of error, I must respectfully dissent from their rejection of the

argument that the settlement of the estate's claim with the Miami County Commissioners does not operate as a complete bar to DePugh's pursuit of additional monies based upon that claim. In my opinion, the settlement does indeed resolve this appeal and renders moot all other issues raised. *Sawchyn v. Westerhaus,* (1991), 72 Ohio App.3d 25, 593 N.E.2d 420; *Estate of Callahan v. Allen* (1994), 97 Ohio App.3d 749, 647 N.E.2d 543.

The majority attempts to distinguish the *Sawchyn* and *Callahan* holdings on the grounds that the courts in both those cases did not consider that the malpractice arguments had much merit. However, it was not the arguable weakness of the merits of the claims that barred their continued pursuit; it was the simple, undeniable fact that the claims were settled, *with finality,* and, therefore, further pursuit on the merits of the settlement, even though against attorneys and not the alleged tortfeasors, was forever waived.

As pointed out by counsel for appellee Landis, David C. Greer, in his brief:

"If the Plaintiff's position were correct, every beneficiary of every wrongful death action would be entitled to three bites at the apple. The first bite would come in the personal representative's judgment against or settlement with whatever parties are alleged actually to have caused the wrongful death. The second bite would come against the attorney for the personal representative for malpractice in failing to generate enough money from the wrongful death claim. The third bite would come against the beneficiary's private attorney for failure to make an unauthorized jump into the personal representative's case to stir up even more money. The legislature in its wisdom headed off such litigation chaos by taking claims for relief away from individual beneficiaries and consolidating them in the decedent's personal representative and by placing final authority to approve or disapprove settlements of wrongful death claims in the Probate Court."

I suggest that the majority's rejection of the finality of the settlement here will open Pandora's Box to even more nefarious and unfortunate consequences than postulated by attorney Greer. What lawyer in the future will ever settle a case before trial or appeal if the lawyer's judgment can be called into question by some ultimate possible beneficiary of the settled claim? An attorney in such a case might feel the need of protection by calling in another attorney to opine on the merits of the settlement. But what would bar a claim against *both* attorneys for failing to obtain more monies on the claim?

Moreover, would not every attorney ultimately involved in the pursuit of a single claim (and it doesn't have to be a claim by an estate) be at risk every time the claim is settled? Or the malpractice suit is settled? Or the settlement of the claim on the malpractice suit is itself questioned? This parade of horrors may seem far-fetched, but given the litigious nature of our society today, and the

incessant pressure to push the limits of liability even farther, I believe the risks are real.

I fear the precedent from the opinion of the majority will open the door to an almost endless succession of bites at the same apple, not just the three envisaged by counsel for appellee Landis.