OPINION
{¶ 1} Plaintiff-appellant Richard J. Crandall appeals from a summary judgment rendered against him and in favor of defendants-appellees City of Fairborn, Fairborn's City Manager Michael Hammond ("Hammond), and his wife Cinda Hammond ("Ms. Hammond") on Crandall's claims relating to his discharge.
 {¶ 2} Crandall contends that the trial court improperly rendered summary judgment for the defendants, because he was a classified employee entitled to due process prior to discharge. He also contends that Fairborn is estopped from denying him a full termination hearing and that Fairborn's public employee classification system is unconstitutional. Alternatively, he contends that he was wrongfully discharged, in violation of public policy, because he questioned the propriety of the city manager's decision to allow his wife to sell counterfeit products on city property.
 {¶ 3} We conclude that the city succeeded in establishing that there is no genuine issue of material fact that Crandall was an unclassified employee, so that, as a matter of law, he was not entitled to a full hearing prior to discharge. We decline to review Crandall's assignments of error relating to his estoppel arguments or relating to the constitutionality of Fairborn's classification system because he failed to assert these arguments in the trial court. Finally, we agree that Crandall has established the existence of a genuine issue of material fact relating to his claim that he was wrongfully discharged in violation of public policy. Accordingly, that part of the judgment of the trial court rendered against Crandall upon his claim that he was wrongfully discharged in violation of public policy is reversed, the judgment of the trial court is affirmed in all other respects, and this cause is remanded for further proceedings.
 I {¶ 4} Fairborn and its manager, Hammond, discharged Crandall from his supervisory position in the Garage Maintenance Department for "lack of candor, refusal to accept responsibility and failure of good behavior within the meaning of . . . the Fairborn Charter" based upon his alleged improper physical contact with Susan Davis. This contact occurred when Davis visited Crandall's garage to deliver some paperwork from a local auto parts store. She claimed that Crandall offensively placed his hand on her posterior without her consent. Davis ultimately pressed charges against him and filed a civil lawsuit against Fairborn.
 {¶ 5} After a subsequent criminal investigation by the Fairborn Police Department, the city asked Crandall to resign. Upon his refusal, a meeting was scheduled to discuss Crandall's continued employment, and Crandall was advised to seek the assistance of counsel. This meeting is at the core of the dispute between the parties.
 {¶ 6} Crandall retained an attorney, who moved to clarify the city's allegations and attempted to protect his due process rights prior to and during this meeting. Fairborn rejected Crandall's counsel's requests. Crandall appeared at the meeting, with one witness, to respond to the city's allegations. Hammond, Assistant City Manager Allen Rothermel, and attorney Janet Cooper appeared on Fairborn's behalf. During the meeting, no record was made, Crandall's counsel was not allowed to speak, and no oaths were administered prior to testimony. After this meeting, Fairborn discharged Crandall.
 {¶ 7} Crandall then attempted an administrative appeal from his discharge. After his appeal was rejected, Crandall filed this action, seeking to appeal his discharge under R.C. 2506.01, et seq., and asserting several causes of actions for monetary damages. His suit was dismissed, under Civ.R.12(B)(6), in its entirety.
 {¶ 8} Crandall then appealed to this court. Crandall v. Fairborn
(May 7, 1999), Greene App. Nos. 98 CA 0111, 98 CV 0329. We reversed the dismissal and remanded the cause for further proceedings, holding that the trial court had erred by failing to convert the motion to dismiss into one for summary judgment. We also held that "an evidentiary hearing is required to make the determination" whether Crandall was "unclassified" for purposes of R.C. 2506.01.
 {¶ 9} Upon remand, Crandall amended his Complaint to add defendant Cinda Hammond as a party and to plead additional causes of action. The parties then renewed motions for summary judgment, which the court awarded to Fairborn and the Hammonds against Crandall. From that judgment, Crandall brings this appeal.
 II {¶ 10} Crandall raises several assignments of error. Each essentially contends that the trial court erred by rendering summary judgment against him upon his claims.
 {¶ 11} We review the appropriateness of summary judgment de novo.Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588,641 N.E.2d 265. "Pursuant to Civ.R.56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. Mentor Soccer Club, Inc.,82 Ohio St.3d 367, 1998-Ohio-389, 696 N.E.2d 201.
 {¶ 12} Under Civ.R.56(C), the moving party bears the initial burden of: (1) informing the trial court of the basis for the motion; and (2) identifying those portions of the record demonstrating that no genuine issue of material fact exists on the essential elements of the non-moving party's claims. Dresher v. Burt, 75 Ohio St.3d 280,1996-Ohio-107, 662 N.E.2d 264. Once the moving party meets that burden, the non-moving party has a reciprocal burden of showing that a genuine issue of material fact exists to prevent summary judgment. Id. If the non-moving party fails to meet this burden, then summary judgment is appropriate. With this standard in mind, we now address Crandall's contentions in a manner that best facilitates our resolution of this appeal.
 III {¶ 13} Crandall's first, third, and fifth assignments of error are as follows:
 {¶ 14} "Fairborn Is Estopped From Denying Appellant A Meaningful Administrative Hearing, When It Opened The Door By Scheduling And Subsequently Holding The `Meeting.'
 {¶ 15} "Appellant Was Denied Equal Protection Under The Law By Virtue Of The Arbitrary Administration And Application Of The Fairborn City Charter.
 {¶ 16} "The Fairborn City Charter Is Unconstitutional As Its Provisions Fail To Implement The Mandated Separation Of Powers And Government Employment Provided By The Ohio Constitution Relative To The Civil Service Determinations As To Merit And Fitness."
 {¶ 17} Crandall raised several of these contentions in his response to the city's motion to dismiss, but he failed to reassert these arguments either in his motion for summary judgment or in his reply to Fairborn's motion for summary judgment. On appeal, Crandall now wishes to challenge the propriety of the summary judgment rendered against him by raising these substantive arguments. He claims that his failure to assert these arguments during the summary judgment proceedings does not prevent him from raising them now, because the issues were implicitly presented to the trial court. Crandall argues further that even if his failure to have asserted these arguments in opposition to Fairborn's motion for summary judgment might ordinarily operate as a waiver, we nevertheless have the discretionary power to consider them.
 {¶ 18} We disagree. A party seeking summary judgment on his own behalf and contesting the opposing party's motion for summary judgment must inform the trial court and the other party of the basis of his motion and his opposition, so that the court and other party are on notice of all potential issues. De Pugh v. Sladoge (1996),111 Ohio App.3d 675, 676 N.E.2d 1231; Maust v. Meyers Product, Inc.
(1989), 64 Ohio App.3d 310, 581 N.E.2d 589 (Property owner who failed to respond to issues raised by city in its motion for summary judgment entered against them could not on appeal raise issues that should have been raised by way of response to the city's motion for summary judgment). Accordingly, we will not consider issues that Crandall did not raise in his motion for summary judgment or in his memorandum in opposition to Fairborn's motion.
 {¶ 19} Crandall's first, third, and fifth assignments of error are overruled.
 IV {¶ 20} Crandall's second, fourth, and seventh assignments of error are also interrelated. They are as follows:
 {¶ 21} "Beyond Fairborn's Bare Assertion To The Contrary And The Charter's Preclusion Without Supportive Documentation, The Record Does Not Remotely Establish That Appellant's Position Was Not Amendable To Competitive Testing.
 {¶ 22} "Appellant Was Denied His Constitutionally Guaranteed Due Process Rights.
 {¶ 23} "The Trial Court Erred In Finding That Appellant Was An Unclassified Employee And Was Not Entitled To Due Process Rights Or Equal Protection."
 {¶ 24} The crux of all of these assignments of error is that Crandall was entitled to a hearing prior to his discharge because he was a classified employee. When classified employees are subject to discharge, they are entitled to quasi-judicial proceedings, which require that the employer provide notice of charges, a hearing, and an opportunity to be heard. The employer is also required to allow the taking of sworn testimony and transcription of the proceedings.
 {¶ 25} Thus, the central issue presented is Crandall's appropriate classification. If he is a classified employee, then these assignments must be sustained because he has a property interest in his employment, which cannot be taken from him without due process of law. But if Crandall is not a classified employee, then these errors must be overruled because he is an at-will employee, with no property interest in his employment, so that it can be taken from him for any reason not contrary to law. Snyder v. Fairborn, Greene App. No. 2001 CA 107,2002-Ohio-3569 (unclassified municipal employee may be discharged without a hearing because he has no property interest in continuing employment).
 {¶ 26} In its motion for summary judgment, Fairborn argued that Crandall was an unclassified employee. In support of this position, Fairborn presented the Affidavit of Rose Trout, Personnel Officer for the city, in which Trout avers that "Rodney Crandall's position as Fleet and Equipment Superintendent was considered to be an unclassified position. The position was originally designated unclassified, at the latest, in 1980, two years before Crandall was hired." Fairborn also presented authenticated Administrative Memoranda Nos. 106 and 183, portions of Fairborn's City Charter, and portions of City Ordinance 60-74 enacted November 1974, Ordinance 11-81 enacted February 1981, Ordinance 40-89 enacted July 1989, and Ordinance 22-93 enacted May 1993. Administrative Memorandum No. 106 was issued by then-City Manager William Burns on June 16, 1980 and Administrative Memorandum No. 183 was issued by Hammond on May 20, 1996.
 {¶ 27} Administrative Memoranda Nos. 106 and 183 identify positions in the unclassified and classified services. Both list Crandall's position as in the unclassified service. Fairborn also directed the trial court's attention to Section 2.1(A) of the City Charter, which provides in pertinent part as follows:
 {¶ 28} "CLASSIFIED AND UNCLASSIFIED SERVICES
 {¶ 29} "Section 2.1 Explanation
 {¶ 30} "The positions in the City of Fairborn shall be separated into the unclassified service and the classified service. Each service is defined in Article VI, Section 4.02 of the City Charter as follows:
 {¶ 31} "A. The unclassified service shall include:
 {¶ 32} "* * *
 {¶ 33} "4. The City Manager, Assistant City Manager, Solicitor, Clerk of the Council, heads of departments, divisions and agencies and their principal assistants * * *."
 {¶ 34} Fairborn presented portions of City Ordinances 60-74, 11-81, 40-89, and 22-93, which show the Equipment Division in the City Organization Chart. Finally, the city proffered the Affidavit of Hammond, which provides in pertinent part as follows:
 {¶ 35} "5. The Fleet and Equipment Superintendent works independently to a great extent and has significant responsibility and authority. It is imperative that the person holding the position instill and maintain a substantial level of trust and confidence with his superiors.
 {¶ 36} "6. Due to the necessity of trust and confidence in the Fleet and Equipment Superintendent and his significant responsibility, authority, and independence, the position cannot be tested in a practical manner."
 {¶ 37} This evidence satisfied Fairborn's initial burden to inform the trial court of the basis for its motion for summary judgment by presenting evidence that Crandall's position was unclassified, so that he was not entitled to a hearing prior to termination.
 {¶ 38} This showing created a reciprocal burden on Crandall's part to set forth specific facts showing that there was a genuine issue of fact for trial. Crandall replied that under the City Charter, Section 2.1(B), he was a classified employee so long as he was not excluded by Section 2.1(A)(4). Section 2.1(B) provides in relevant part as follows:
 {¶ 39} "The classified service shall compromise all positions not specifically included by this Charter in the unclassified service * * *."
 {¶ 40} He claims Fleet and Equipment, his work area, was not a separate division, department, or agency. To support this claim, Crandall proffered Fairborn's answers to his requests for admissions, which acknowledge that Fairborn's City Charter requires an ordinance by city council to establish any city department, division, or agency. Additionally, he offers the Affidavit of Kevin Bowman, in which Bowman avers that there is no ordinance establishing a Fleet and Equipment Division, based upon Bowman's study of the Codified Ordinances of the City of Fairborn.
 {¶ 41} We conclude that the trial court properly found that there are no genuine issues of material fact regarding Crandall's classification, and we agree that, as a matter of law, Crandall's service was unclassified. Section 2.1(A)(4) defines unclassified service to include heads of departments and divisions. Although Crandall claims that Fairborn's proffered Ordinances are nothing more than organization charts that do not comply with Section 2.13 of the Ordinance, he provides no evidence beyond other examples of ordinances, nor does he provide even copies of the relevant portions of these exemplary ordinances to prove his point.
 {¶ 42} Sensing a potential weakness in this argument, Crandall also relies upon our opinion in Lewis v. Fairborn (1997),124 Ohio App.3d 292, 706 N.E.2d 24, for the proposition that "whether an applicant's fitness for the position * * * can be practically determined by competitive examination is an issue that must be resolved" to determine if an employee's service is classified or unclassified. We distinguish Lewis v. Fairborn, supra, based upon our recent decision inSnyder v. Fairborn, supra. In that case, we explained that in Lewis the position of the employee had not been specifically addressed in any of Fairborn's Administrative Memoranda, its Personnel Advisory Board Rulings, or its Charters. Put simply, Fairborn had made no specific determination whether Lewis' specific position was in the classified or the unclassified service except to say that all municipal court employees were in the unclassified service. We concluded that Lewis should be read to stand for the proposition that in the circumstances presented Lewis was entitled to a more particularized assessment of whether appointment to her position could be determined by competitive examination — not that every position, whether or not the subject of an express declaration of its status as classified or unclassified, is subject to an assessment of whether appointment to the position can be determined by examination.
 {¶ 43} In this instance, Crandall's position has been specifically designated as an unclassified position on numerous occasions, as far back as 1980. Thus, in the case before us, unlike in Lewis v. Fairborn, supra, the city has made specific findings with regard to whether the position in question should be classified or unclassified, so that a determination of this issue need not be made based upon whether appointment to the position is subject to competitive testing.
 {¶ 44} Because Crandall was not a classified employee, but was instead an at-will employee, he was not entitled to a hearing complying with certain procedural requirements prior to his discharge. Accordingly, Crandall's second, fourth, and seventh assignments of error are overruled.
 V {¶ 45} Crandall's sixth assignment of error is as follows:
 {¶ 46} "Appellant's Termination Must Be Reversed As It Is In Violation Of Clear Public Policy Considerations."
 {¶ 47} Crandall also asserts that his discharge was unlawful because it was against public policy. This argument is based upon his claims that he was really fired for questioning the propriety of Hammond having allowed his wife to sell counterfeit purses on city property. Crandall contends that this motivation for his discharge violates public policy. Accordingly, the trial court erred by granting summary judgment against Crandall on this issue. We agree that Crandall has created a genuine issue of material fact upon which reasonable minds may disagree.
 {¶ 48} Under the employment-at-will doctrine, an employer is entitled to discharge an at-will employee at any time, for any reason, or for no reason at all, as long as the discharge is not contrary to law.Hapner v. Tuesday Morning, Inc. Montgomery App. No. 19395,2003-Ohio-781. An employer may not, however, discharge an employee when the discharge violates "clear public policy" established by federal or state constitutions or statutes, administrative rules or regulations, or the common law. Kulch v. Structural Fibers, Inc. 78 Ohio St.3d 134,1997-Ohio-219, 677 N.E.2d 308. To establish a claim for tortious wrongful discharge, Crandall must demonstrate four things:
 {¶ 49} "(1) That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element)[;] (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element)[;] (3) that the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element)[; and] (4) [that] the employee lacked an overriding legitimate business justification for the dismissal (the overriding justification element)." Id.
 {¶ 50} The "clarity" and "jeopardy" elements are questions of law to be determined by the court, and the "causation" and "overriding justification" elements are questions of fact for a jury. Id.
 {¶ 51} We conclude that Crandall has created a genuine issue of material fact relating to his claim of wrongful discharge in violation of public policy. Hammond allowing his wife to sell counterfeit purses on city property arguably constituted an abuse and misuse of city property under Fairborn's charter. Discharging a city employee for bringing to his city manager's attention allegations of official impropriety involving the misuse of city property, directly involving the city manager and his office, is contrary to public policy, as expressed in Fairborn's charter, which prohibits misuse of public property. Not only is the alleged impropriety itself a matter of public interest and concern, but the public disrepute that might attend the city manager and other chief officers of the city government if the allegations are not investigated and any improprieties found promptly stopped, ought to be a matter of concern to the city's officers and to the public. Firing the messenger is bad policy, and disserves the public policy in favor of exposing and eliminating misuse of public property, in violation of the city charter. Nor can the public employee be faulted for bringing the allegations of misconduct to the attention of the official most directly implicated in this case — the city manager; if the allegations are found to be without any basis, neither the city manager nor the city government will have been brought into disrepute. Indeed, if Crandall, as he claims, brought the allegations to the sole attention of the city manager, in good faith, it is hard to imagine a more honorable course of action. To have done nothing would have been wrong. To have aired the allegations to a wider audience would have run the risk of wronging the city manager and his wife, if those allegations were without a basis in fact.
 {¶ 52} During Crandall's deposition, he testified regarding Ms. Hammond's sale of purses on city property and how he believed that related to his ultimate termination:
 {¶ 53} "A. [Crandall] I said I don't think what's happening here is right.
 {¶ 54} "Q. [Attorney] You made — you said those exact words to Mr. Hammond?
 {¶ 55} "* * *
 {¶ 56} "Q. Then what was said?
 {¶ 57} "A. Something to the effect that's not up for discussion. I won't discuss that with you, or something to that effect.
 {¶ 58} "* * *
 {¶ 59} "Q. Did Mr. Hammond raise his voice in that conversation with you?
 {¶ 60} "A. I don't think he raised his voice, no.
 {¶ 61} "Q. Did his face turn red?
 {¶ 62} "A. That comes to mind. I recall a facial expression. Whether it was redness I don't know.
 {¶ 63} "Q. A facial expression just like —
 {¶ 64} "A. Yes, cut off, or it's not for discussion. A stern look maybe but some type of facial expression accompanied the conversation.
 {¶ 65} "* * *
 {¶ 66} "Q. Do you believe that you were terminated because of your alleged complaints about purse sales?
 {¶ 67} "A. Yes, I believe that."
 {¶ 68} We conclude that there is a genuine issue of material fact whether Crandall was discharged because he brought the subject of the purse sales to the attention of the city manager, which would constitute a discharge in violation of public policy. Accordingly, Crandall's sixth assignment of error is sustained. Upon remand, potential defenses to this claim would include, without limitation: (1) failure of proof of the essential predicate facts; (2) that Crandall's discharge was not a proximate result of the predicate facts; and (3) that, even if Crandall's discharge was partly motivated by his comments to the city manager concerning the purse sales, the city possessed an overriding justification for Crandall's discharge, perhaps based upon his offensive conduct toward Susan Davis.
 VI {¶ 69} Crandall's first, second, third, fourth, fifth, and seventh assignments of error having been overruled, and his seventh assignment of error having been sustained, the judgment of the trial court awarding summary judgment against Crandall on his claim that he was wrongfully discharged in violation of public policy is reversed; the judgment of the trial court is affirmed in all other respects; and this cause is remanded for proceedings consistent with this opinion.
WOLFF and GRADY, JJ., concur.