JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant Reliance Insurance Company[1] appeals from the decision of the trial court to grant summary judgment in favor of defendants-appellees, attorney Hunter S. Havens and the law firm that employed him, Mazanec, Raskin, and Ryder Co., L.P.A., (hereinafter referred to simply as "Havens") on Reliance's claims of legal malpractice and breach of contract.
 {¶ 2} Reliance argues summary judgment was inappropriate. It contends that the affidavit of its expert demonstrates a genuine issue of material fact existed concerning whether Havens committed legal malpractice in his representation of Reliance in an underlying case, thereby leading Reliance to settle that case rather than to test by jury trial any potential liability it had.
 {¶ 3} Following a review of the record, this court finds Reliance's argument unpersuasive. The trial court's decision, therefore, is affirmed.
 {¶ 4} The record reflects that in late 2000, Reliance hired Havens to represent it in an action that had been filed in the Cuyahoga County Court of Common Pleas styled Katherine Frank, et al. v. Jeffrey Angel, etal.[2] The case resulted from a fiery November 18, 1999 motor vehicle accident. Frank, the principal plaintiff, had been severely injured in the accident, and Angel, the driver who had caused the accident, had limited motor vehicle insurance.
 {¶ 5} At the time of the accident, according to her "employment agreement," Frank worked for "Healthcare Financial Staffing," a division of a company named "On Assignment." The company had two insurance policies issued to it in October 1999 by Reliance that provided uninsured/underinsured motorists' ("UIM") coverage, i.e., a general commercial liability ("GCL") policy and an umbrella policy.
 {¶ 6} Under these circumstances, Frank presented in the fall of 2000 a claim in the case against Reliance that was based upon the Ohio Supreme Court's decision in Scott-Ponzer v. Liberty Mut. Ins. Co.,85 Ohio St.3d 660, 1999-Ohio-292. The Scott-Ponzer decision determined that pursuant to R.C. 3937.18, depending on the language of the insurance contract, an off-duty employee who was involved in a motor vehicle accident could have a cause of action against their employer's insurer for UIM coverage, as such coverage was implied as a matter of law.
 {¶ 7} Frank therefore requested a declaratory judgment against Reliance, seeking UIM coverage for the injuries she sustained in the accident and, under the umbrella policy, a decision that the limit of the UIM coverage available to her was $25 million. From the record, it seems Frank submitted to Reliance discovery requests for admissions ("RFAs") shortly after she served upon it a copy of the complaint.
 {¶ 8} With the information that was available to him in September, 2000 Havens completed his "case assessment report" for Reliance. His report contains his opinion that under the supreme court's "recent [Scott-Ponzer] opinion, it appears as though the Plaintiff, Katherine Frank, is entitled to collect under the Reliance Insurance Company policy with the insured, Assignment [One]."
 {¶ 9} Havens explained his opinion by analyzing the policies in the context of the applicability of Scott-Ponzer. After a lengthy comparison in which he acknowledged that although the opinion "greatly expand[ed] coverage beyond what the carrier anticipated or expected," policy language was construed "strictly against the insurer" and liberally in favor of the injured. Havens concluded that Scott-Ponzer therefore meant a verdict in Reliance's favor on Katherine Frank's claims was "unlikely."
 {¶ 10} Havens also sent copies to Reliance of his recommended answers to Franks' RFAs. In answer to Frank's request No. 3, "Admit or deny that on November 18, 1999 Katherine Frank was an insured of Reliance Insurance Company," his recommendation stated, "[She] was not a named insured * * *, but according to * * * the Scott-Ponzer Opinion, [she] is considered the uninsured for the purposes of underinsured motorist coverage."
 {¶ 11} Reliance's representative, Kelly Stackpole, did not use the typewritten answers Havens provided on his copy of Frank's RFAs. Instead, she handwrote terse answers on her own copy; thus, she wrote in answer to No. 3 simply, "Admit." In January 2001, Stackpole's copy of Reliance's answers to Frank's RFAs somehow came to Frank.
 {¶ 12} By March, 2001 Reliance sought new representation in the Frank case. Reliance's new attorney, John G. Farnan, assessed the case differently than Havens. In his opinion, "Reliance should never have conceded coverage [under Scott-Ponzer] for several reasons," including a potential "absolute statutory defense" to liability under the CGL policy, and an argument that Frank was not an employee of Assignment One but rather an independent contractor. Farnan indicated that these defenses "ranged from very strong to merely colorable." He recommended Reliance file a "motion for leave to withdraw and amend" its prior responses to Frank's RFAs.
 {¶ 13} Farnan additionally pointed out that time was of the essence in view of the fact that trial had been set for May 14, 2001. To "adequately" prepare for trial, he advised Reliance he would need to take, inter alia, the following actions: 1) review and summarize Frank's medical records; 2) prepare witness deposition summaries; 3) research several legal issues, including marshaling case law to support the proposed defenses; and, 4) hire an insurance expert "who would hopefully be able to testify, over likely objections, that there is noScott-Ponzer coverage available to the claimants for the reasons outlined above."
 {¶ 14} Farnan warned Reliance that all of these steps would "involve some significant cost, in terms of experts and attorney fees * * * unless Reliance [was] willing to roll over and pay significant settlement monies * * *."
 {¶ 15} On April 5, 2001 Farnan notified Reliance that Frank had filed a brief that contained "several arguments as to why Reliance should not be able to withdraw its prior admissions." One of Frank's arguments referenced the "handwritten answers [to the RFAs Stackpole] apparently wrote out and faxed back to Hunter Havens." Farnan indicated he had "wrongly assumed" the handwritten copy was a "draft copy" rather than "the version filed with the court," but reassured Reliance that the two versions of answers were "not materially different in any pertinent respect."
 {¶ 16} Within a month of the foregoing correspondence, Farnan arranged a $4 million settlement with Frank, sending an e-mail to Reliance on May 4, 2001 that advised his client it was "a fine settlement in a very dangerous case." Reliance agreed, and responded to Farnan, "Congratulations on a great result!"
 {¶ 17} Effective October 31, 2001, the Ohio General Assembly amended R.C. 3937.18 with the express purpose to supercede the holding inScott-Ponzer.[3] Subsequently, Reliance retained new counsel, and, on January 22, 2002, filed the instant action asserting a claim of legal malpractice against Havens.
 {¶ 18} Reliance averred that Havens' improper handling of the Frank matter "unreasonably precluded Reliance, as a matter of law, from asserting several otherwise valid defenses" to Frank's claims; further, that "[a]s the direct and proximate result of defendant's (sic) negligence and reckless disregard of Reliance's interests in the handling of the Frank case, Reliance entered into a settlement, which was, in whole or in part, in excess of any liability owed to Frank."
 {¶ 19} Havens eventually filed a motion for summary judgment with respect to Reliance's claims. The motion was supported by the affidavits of two attorneys, viz., defense counsel and the attorney who represented Frank in the underlying case.
 {¶ 20} Reliance filed a brief in opposition with numerous contemporaneously-filed verified exhibits. These exhibits included copies of the relevant policies issued to "On Assignment," copies of correspondence, and portions of deposition testimony. Reliance also filed the affidavit of its "expert," Fredric L. Young, who opined that Havens' representation "fell below the standard of practice and * * * standard of care applicable to attorneys," and, further, "was negligent." Young concluded his analysis by stating that "[h]ad Havens not admitted coverage" and had Havens asserted the defenses suggested by Young, "Reliance would likely have been successful in denying coverage in theFrank case."
 {¶ 21} The trial court ultimately granted Havens' motion for summary judgment on Reliance's claims.
 {¶ 22} Reliance presents the following two assignments of error for review:
 {¶ 23} "I. The lower court erred in granting summary judgment in a case where the affidavit of Fredric L. Young, a legal expert for Reliance, itself is sufficient to create a genuine issue of material fact.
 {¶ 24} "II. The lower court erred in determining that Reliance's claim for legal malpractice was insufficient to survive summary judgment."
 {¶ 25} Reliance argues it produced evidence in the form of its expert's affidavit that precluded summary judgment for Havens on its claims of legal malpractice. This argument is unpersuasive.
 {¶ 26} In reviewing a motion for summary judgment, this court conducts a de novo review of the trial court's decision. "A court reviewing the granting of a summary judgment must follow the standards set forth in Civ.R. 56(C) * * *." Aglinsky v. Cleveland Bldrs. Supply Co. (1990),68 Ohio App.3d 810.
 {¶ 27} When a court considers a motion for summary judgment, the moving party bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to any material element of the nonmoving party's claim. Dresher v. Burt,75 Ohio St.3d 280, 1996-Ohio-107. If the moving party does so, the nonmoving party has a reciprocal burden to produce evidence on any issue for which that party bears the burden of production at trial. Wing v.Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108.
 {¶ 28} When the defendant, as the moving party, furnishes evidence that demonstrates plaintiff has not established the elements necessary to maintain its action for legal malpractice, summary judgment is properly granted in favor of defendant. Kovacs v. Thompson, Hewitt O'Brien
(1997), 117 Ohio App.3d 465 (discretionary appeal not allowed [1997],78 Ohio St.3d 1512); cf., Vahila v. Hall, 77 Ohio St.3d 421, 1997-Ohio-297.
 {¶ 29} In order to have established a cause of action for legal malpractice in Ohio, Reliance was required to present evidence to demonstrate the following: 1) an attorney-client relationship existed that imposed a professional duty upon Havens toward Reliance; 2) Havens breached that professional duty; and, 3) Reliance suffered damages proximately caused by the breach. Id., quoting Sevin v. Thompson, Hine Flory (May 29, 1996), Summit App. Nos. 17349, 17483. See, also, Krahn v.Kinney (1989), 43 Ohio St.3d 103 at 105.
 {¶ 30} Reliance contends at great length in its appellate brief that its expert's opinion created a genuine issue of material fact concerning the second requirement of its claim. However, even assuming Havens improperly conceded the applicability of Scott-Ponzer to Frank's claim, it is clear from a perusal of the evidentiary materials presented to the trial court that Reliance could not establish the third element of its cause of action.
 {¶ 31} Generally, in order to establish the element of proximate cause in an action for legal malpractice, a plaintiff must establish a "causal connection" between the attorney's action and the unwanted result. Vahilav. Hall, supra. Reliance presented no evidence in this case to support such a conclusion. Endicott v. Johrendt (July 22, 2000), Franklin App. No. 99AP-935.
 {¶ 32} The record conclusively demonstrates that Farnan believed he could overcome the difficulties posed by Reliance's previously submitted responses to Frank's RFAs. However, he was far from confident that Reliance would prevail on any potential defense raised to Frank's claim based upon Scott-Ponzer. As previously set forth, Farnan warned Reliance that if the Frank case went to trial, he needed to find an expert who "hopefully" could testify that there was no Scott-Ponzer coverage available. It must be remembered in this context that the amendment to R.C. 3937.18 that superceded Scott-Ponzer was not effective until October, 2001.
 {¶ 33} Farnan's letters to his client show it was for this reason, rather than Havens' earlier handling of the case, that Reliance might be forced to "roll over and settle" with Frank. In Farnan's words, "As [to] the * * * umbrella policy * * * coverage, the defenses are more problematic and less clear." The language of the umbrella policy exposed Reliance to a potential $25 million in liability under Scott-Ponzer. This was the same assessment of the Frank case that Havens made. Farnan understandably was pleased in May, 2001 when Reliance chose to accept the agreement he had negotiated with Frank, whereby she withdrew herScott-Ponzer claim in exchange for a mere $4 million.
 {¶ 34} The settlement was entered into as a result of Farnan's exercise of reasonable judgment in handling the case, independent of Havens' previous actions, and thus operated to bar Reliance's subsequent malpractice claim. E.P.B., Inc. v. Cozza Steuer (1997),119 Ohio App.3d 177, citing DePugh v. Sladoje (1996),111 Ohio App.3d 675. That is, in order to create a genuine issue of material fact with regard to the element of damages, the client's acceptance of a reasonable settlement in a case must be directlyattributable to an attorney's substandard representation in that case.Vagianos v. Halpern (Dec. 14, 2000), Cuyahoga App. No. 76408.
 {¶ 35} To paraphrase the court in E.P.B., Inc. v. Cozza Steuer,
supra, were it not for Reliance's decision to settle the Frank casebefore Farnan tested his proposed "strong to merely colorable" defenses to her Scott-Ponzer claim, Reliance might not have had to make any payment to her. Under the circumstances presented herein, therefore, Reliance did not prove it suffered any damages as a result of Havens' earlier representation. Id.; cf., Vahila v. Hall, supra.
 {¶ 36} Consequently, the trial court did not err in granting summary judgment to Havens on Reliance's claims of legal malpractice. Reliance's assignments of error, accordingly, are overruled.
 {¶ 37} The trial court's decision is affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J. and Kilbane, J. concur
[1] At the time the complaint was filed, Reliance was "in liquidation," thus, the action was filed "by and through" its successor, M. Diane Koken, Insurance Commissioner for the Commonwealth of Pennsylvania.
[2] Case number CV-399467.
[3] The Ohio Supreme Court, moreover, on November 5, 2003 determined inWestfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849 thatScott-Ponzer was wrongly-decided.